## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------- x
:
*In re*                                              :        Chapter 7
:
AFFIRMATIVE INSURANCE                                :        Case No. 15-12136 (CSS)
HOLDINGS, INC., *et al.*,                            :
:        (Jointly Administered)
Debtors.[1]                                          :
:
---------------------------------------------------- x
:
JCF AFFM Debt Holdings, L.P.,                         :        Adv. Proc. No. 16-    (CSS)
:
Plaintiff,                                 :
:
v.                                        :
:
AFFIRMATIVE INSURANCE                                :
HOLDINGS, INC., AFFIRMATIVE                          :
MANAGEMENT SERVICES, INC.,                           :
AFFIRMATIVE SERVICES, INC.,                          :
AFFIRMATIVE UNDERWRITING                             :
SERVICES, INC., AFFIRMATIVE                          :
INSURANCE SERVICES, INC.,                            :
AFFIRMATIVE GENERAL AGENCY,                          :
INC., AFFIRMATIVE INSURANCE                          :
GROUP, INC., AFFIRMATIVE L.L.C.,                     :
ANNE MELISSA DOWLING, ACTING                         :
DIRECTOR OF INSURANCE OF THE                         :
STATE OF ILLINOIS, solely as Liquidator of          :
AFFIRMATIVE INSURANCE COMPANY,                       :
and DON A. BESKRONE, solely as                       :
INTERIM TRUSTEE,                                     :
:
Defendants.                                :

----------------------------------------------------

---

[1] The "***Debtors***," together with the last four digits of each Debtor's federal tax identification number, are Affirmative Insurance Holdings, Inc. (0432); Affirmative Management Services, Inc. (7252); Affirmative Services, Inc. (7255); Affirmative Underwriting Services, Inc. (7250); Affirmative Insurance Services, Inc. (8823); Affirmative General Agency, Inc. (2345); Affirmative Insurance Group, Inc. (7246); and Affirmative, L.L.C. (2347).

**COMPLAINT FOR DECLARATORY JUDGMENT
PURSUANT TO SECTIONS 506(a) AND 541(a) OF THE
BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 7001(2) DETERMINING THE EXTENT, VALIDITY, AND PRIORITY
OF LIEN AND FOR ENTRY OF AN ORDER GRANTING RELIEF FROM THE
AUTOMATIC STAY AND DIRECTING TURNOVER OF COLLATERAL PURSUANT
TO SECTION 362(d) OF THE BANKRUPTCY CODE**

Plaintiff JCF AFFM Debt Holdings, L.P. (the "*JCF Lender*"), through its

undersigned counsel, as and for its complaint against Affirmative Insurance Holdings, Inc.

("*HoldCo*"), Affirmative Management Services, Inc., Affirmative Services, Inc., Affirmative

Underwriting Services, Inc., Affirmative Insurance Services, Inc., Affirmative General Agency,

Inc., Affirmative Insurance Group, Inc., Affirmative, L.L.C., Anne Melissa Dowling, acting

director of insurance of the State of Illinois, solely in her capacity as the liquidator of

Affirmative Insurance Company (the "*Illinois Liquidator*"), and Don A. Beskrone, solely in his

capacity as interim chapter 7 trustee (the "*Interim Trustee*"), alleges as follows:

## NATURE OF ACTION

1.      This is an action pursuant to Rule 7001(2) of the Federal Rules of Bankruptcy

Procedure, sections 362(d), 506(a), and 541(a) of title 11 of the United States Code (the

"*Bankruptcy Code*"), and the Declaratory Judgment Act (28 U.S.C. § 2201).

2.      By this complaint, the JCF Lender seeks a judgment of this Court declaring that it

has a validly perfected security interest in and lien on the deposit account established in the name

of HoldCo ending in 8646 and the funds located therein, which is currently maintained at UMB

Bank, N.A. ("*UMB*") in the State of Missouri (the "*DACA 1 Account*"), including any funds

disbursed from the DACA 1 Account that remain or are recoverable as "property of the estate"

under section 541(a) of the Bankruptcy Code, to secure repayment of the JCF Loan (as defined

herein) and that such lien is not subject or subordinate to any other interest in, lien on, or claim

against the DACA 1 Account.

3.      By this complaint, the JCF Lender also seeks a judgment of this Court declaring that it has a validly perfected security interest in and lien on the deposit account established in the name of HoldCo ending in 8654 and the funds located therein, which is currently maintained at UMB in the State of Missouri (the "***DACA 2 Account***"), to secure repayment of the JCF Loan (as defined herein) and that such lien is not subject or subordinate to any other interest in, lien on, or claim against the DACA 2 Account.

4.      By this complaint, the JCF Lender also seeks a judgment of this Court declaring that it has a validly perfected security interest in and lien on the Hallberg Judgment (as defined herein) to secure repayment of the JCF Loan (as defined herein) and that such lien is not subject or subordinate to any other interest in, lien on, or claim against the Hallberg Judgment.

5.      By this complaint, the JCF Lender also seeks a judgment of this Court granting the JCF Lender relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code in order to exercise any and all of its remedies with respect to the DACA 1 Account, the DACA 2 Account, and the Hallberg Judgment and directing the Interim Trustee and UMB to turn over any DACA 1 Collateral (as defined herein), DACA 2 Collateral (as defined herein), or proceeds of the Hallberg Judgment in his or its possession, custody, or control.

## JURISDICTION AND VENUE

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

7.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(b).

9.      Under Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the JCF Lender consents to the entry of final orders or judgments by this Court if it is determined that the Court cannot enter final orders consistent with Article III of the United States Constitution.

## PARTIES

10.     The JCF Lender is administrative agent ("**Administrative Agent**"), collateral agent ("**Collateral Agent**"), and lender under a credit agreement, dated as of September 30, 2013, with HoldCo (as amended, supplemented or otherwise modified from time to time, the "**JCF Credit Agreement**").  As Administrative Agent and Collateral Agent under the JCF Credit Agreement, the JCF Lender is the proper party to bring this action on behalf and for the benefit of the JCF Lender, as the secured lender.  The JCF Lender is a limited partnership organized under the laws of the Cayman Islands, located at 190 Elgin Avenue, Grand Cayman KY1-9005, Cayman Islands (c/o Intertrust Corporate Services (Cayman) Limited).

11.     Upon information and belief, HoldCo is a corporation organized under the laws of the state of Delaware, formerly located at 150 Harvester Drive, Suite 250, Burr Ridge, Illinois 60527.

12.     Upon information and belief, Affirmative Management Services, Inc. is a corporation organized under the laws of the state of Texas, formerly located at 150 Harvester Drive, Suite 250, Burr Ridge, Illinois 60527.

13.     Upon information and belief, Affirmative Services, Inc. is a corporation organized under the laws of the state of Texas, formerly located at 150 Harvester Drive, Suite 250, Burr Ridge, Illinois 60527.

14.     Upon information and belief, Affirmative Underwriting Services, Inc. is a corporation organized under the laws of the state of Texas, formerly located at 150 Harvester Drive, Suite 250, Burr Ridge, Illinois 60527.

15.     Upon information and belief, Affirmative Insurance Services, Inc. is a corporation organized under the laws of the state of Texas, formerly located at 150 Harvester Drive, Suite 250, Burr Ridge, Illinois 60527.

16.     Upon information and belief, Affirmative General Agency, Inc. is a corporation organized under the laws of the state of Louisiana, formerly located at 150 Harvester Drive, Suite 250, Burr Ridge, Illinois 60527.

17.     Upon information and belief, Affirmative Insurance Group, Inc. is a corporation organized under the laws of the state of Texas, formerly located at 150 Harvester Drive, Suite 250, Burr Ridge, Illinois 60527.

18.     Upon information and belief, Affirmative, L.L.C. is a limited liability company organized under the laws of the state of Louisiana, formerly located at 150 Harvester Drive, Suite 250, Burr Ridge, Illinois 60527.

19.     HoldCo, Affirmative Management Services, Inc., Affirmative Services, Inc., Affirmative Underwriting Services, Inc., Affirmative Insurance Services, Inc., Affirmative General Agency, Inc., Affirmative Insurance Group, Inc. and Affirmative, L.L.C. are debtors in the above-captioned chapter 7 cases (collectively, the "***Debtors***").

20.     Upon information and belief, the Illinois Liquidator is the statutory and court-appointed liquidator for Affirmative Insurance Company ("***AIC***") by virtue of Article XIII, 215 ILCS 5/187 *et seq*., and the Order of Liquidation with Finding of Insolvency entered on March 24, 2016 in *People of the State of Illinois, ex rel., Anne Melissa Dowling, Acting Director of Insurance of the State of Illinois vs. Affirmative Insurance Company*, No. 2015 CH 13718 (Ill. Circ. Ct. Chancery Division 2016) (the "***Liquidation Order***").

21.     Prior to the entry of the Liquidation Order, Anne Melissa Dowling, as acting director of insurance of the State of Illinois, was the statutory and court-appointed rehabilitator for AIC by virtue of Article XIII, 215 ILCS 5/187 *et seq*., and the Agreed Order of Rehabilitation entered on September 16, 2015 in *In re the Rehabilitation of Affirmative Insurance Co.*, No. 2015 CH 13718 (Ill. Circ. Ct. Chancery Division 2015).  All references to the "Illinois

Liquidator" herein for any period prior to the entry of the Liquidation Order are to Anne Melissa Dowling, in her capacity as the statutory and court-appointed rehabilitator for AIC.

22.     AIC is a direct subsidiary of HoldCo.  The Illinois Liquidator is also an interested party in the Debtors' chapter 7 cases, has appeared before this Court in connection with the Debtors' chapter 11 cases on numerous occasions, and otherwise has been actively involved in the above-captioned cases since their inception.  The Illinois Liquidator has filed the following pleadings in the Debtors' chapter 11 and chapter 7 cases: *Motion And Order For Admission Pro Hac Vice Of Faye B. Feinstein Of Quarles & Brady LLP* [Docket No. 24]; *Motion And Order For Admission Pro Hac Vice Of Christopher Combest Of Quarles & Brady LLP* [Docket No. 25]; *Response Of Anne Melissa Dowling, Acting Director Of Insurance Of The State Of Illinois, Acting As Statutory And Court-Affirmed Rehabilitator For Affirmative Insurance Company, To Debtor's Motion For Entry Of Interim And Final Orders (I) Establishing Notice And Objection Procedures For Transfers Of Equity Securities, (II) Establishing A Record Date For Notice And Sell-Down Procedures For Trading In Claims Against The Debtors' Estates, And (III) Granting Related Relief, And Reservation Of Rights* [Docket No. 26]; *Motion Of Anne Melissa Dowling, Acting Director Of Insurance Of The State Of Illinois, Acting As Statutory And Court-Affirmed Rehabilitator For Affirmative Insurance Company, For An Order Modifying The Automatic Stay In Connection With The Termination Of A Services Agreement With Certain Debtors And Granting Related Relief* [Docket No. 58]; *Limited Objection Of Anne Melissa Dowling, Acting Director Of Insurance Of The State Of Illinois, Acting As Statutory And Court-Affirmed Rehabilitator For Affirmative Insurance Company, To Application Of Official Committee Of Unsecured Creditors To Retain And Employ Potter Anderson & Corroon LLP As Co-Counsel And Reservation Of Rights* [Docket No. 140]; *Response Of Anne Melissa Dowling, Acting Director Of Insurance Of The State Of Illinois, Acting As Statutory And Court-Affirmed*

*Rehabilitator For Affirmative Insurance Company, To Supplemental Declaration Of Jeremy W. Ryan In Support Of The Application Of The Official Committee Of Unsecured Creditors To Retain Potter Anderson & Corroon LLP* [Docket No. 144]; *Response Of Anne Melissa Dowling, Acting Director Of Insurance Of The State Of Illinois, In Her Role As Statutory And Court-Affirmed Rehabilitator For Affirmative Insurance Company, To Motion Of Official Committee Of Unsecured Creditors For Conversion Of Chapter 11 Case To Cases Under Chapter 7 Of The Bankruptcy Code And Request For Dismissal In Lieu Of Conversion* [Docket No. 214]; *Reply Of Anne Melissa Dowling, Acting Director Of Insurance Of The State Of Illinois, In Her Role As Statutory And Court-Affirmed Rehabilitator For Affirmative Insurance Company, To (I)(A) Debtors' Objection To Motion Of Official Committee Of Unsecured Creditors For Conversion And (B) The Committee's Reply Thereto And (II) In Further Support Of Dismissal In Lieu Of Conversion* [Docket No. 226]; *Motion Of Anne Melissa Dowling, Acting Director Of Insurance Of The State Of Illinois, Acting As Statutory And Court-Affirmed Rehabilitator For Affirmative Insurance Company, For Allowance And Payment Of Administrative Expenses Pursuant To 11 U.S.C. § 503(b)* [Docket. No. 315]; *Motion Of Anne Melissa Dowling, Acting Director Of Insurance Of The State Of Illinois, In Her Role As Statutory And Court-Affirmed Rehabilitator For Affirmative Insurance Company, In Her Role As Statutory And Court-Affirmed Rehabilitator For Affirmative Insurance Company, For Entry Of An Order Dismissing The Debtors' Chapter 11 Cases Pursuant To 11 U.S.C. § 1112(b)* [Docket. No. 321]; and *Motion Of Anne Melissa Dowling, Acting Director Of Insurance Of The State Of Illinois, In Her Role As Statutory And Court-Affirmed Liquidator For Affirmative Insurance Company, Pursuant To Federal Rule Of Bankruptcy Procedure 2004 and Local Rule 2004-1 Permitting Discovery From Dixon Hughes Goodman LLP* [Docket No. 348].  In addition, the Illinois Liquidator has filed proofs of claim against the Debtors' estates.

23.    Don A. Beskrone is the Chapter 7 trustee for the Debtors [Docket No. 338].

## BACKGROUND

24.    In December 2003, HoldCo, InsureOne Independent Agency, LLC ("*InsureOne*") (formerly a wholly-owned subsidiary of HoldCo), and American Agencies General Agency, Inc. brought an action in the Circuit Court of Cook County, Illinois to enforce certain non-compete and non-solicitation agreements entered into with James Hallberg ("*Hallberg*"), the former president of InsureOne, eight former employees of InsureOne, and two of Hallberg's family trusts.  On November 21, 2008, the Circuit Court of Cook County, Illinois entered a Memorandum Order and Judgment, which was amended on January 20, 2009, and which entered judgment against Hallberg, Hallberg's nephew, William J. Hallberg, and Hallberg's mother-in-law, Casmira Lens, as Trustee of the James P. Hallberg 1994 Gift Trust and the Patricia L. Hallberg 1994 Gift Trust and in favor of HoldCo, InsureOne, and American Agencies General Agency, Inc. in the amount of approximately $7.7 million, plus reasonable attorneys' fees and costs (the "*Hallberg Judgment*").  A true and correct copy of the Hallberg Judgment is attached hereto as *Exhibit* "*A*."

25.    On September 30, 2013, HoldCo, as borrower, Credit Suisse Loan Funding LLC ("*Credit Suisse*"), as lender, Credit Suisse AG, Cayman Islands Branch ("*Credit Suisse AG*"), as administrative agent and collateral agent, and Credit Suisse Securities (USA) LLC, as sole bookrunner and sole lead arranger, entered into that certain credit agreement, dated as of September 30, 2013 (as amended, supplemented or otherwise modified from time to time), under which Credit Suisse made a loan to HoldCo (the "*First Lien Loan*").

26.     In exchange for the receipt of the First Lien Loan, the Debtors granted a lien on and a first priority security interest in all of their personal property (subject to certain limited exclusions) for the benefit of Credit Suisse AG, as collateral agent for the First Lien Loan.

27.     HoldCo, as borrower, and the JCF Lender, as Administrative Agent, Collateral Agent, and lender entered into the JCF Credit Agreement, under which the JCF Lender made a loan to HoldCo (the "***JCF Loan***").  A true and correct copy of the JCF Credit Agreement is attached hereto as ***Exhibit*** "***B***."  Upon information and belief, the proceeds of the First Lien Loan and the JCF Loan were used to repay and refinance HoldCo's then existing senior secured credit facility.

28.     In connection with the JCF Loan, the Debtors entered into a guarantee and collateral agreement, dated as of September 30, 2013 (the "***GCA***").  A true and correct copy of the GCA is attached hereto as ***Exhibit*** "***C***."  Pursuant to the GCA, each of the Debtors granted to the JCF Lender a continuing lien on and security interest in all of the personal property of each such Debtor (in each case, wherever located and then owned or at any time thereafter acquired by such Debtor or in which such Debtor had as of the date of the GCA or at any time subsequent thereto acquired any right, title, or interest), subject to certain limited exclusions further outlined in the GCA (collectively, the "***Pledged Collateral***").  Included in the Pledged Collateral were all Deposit Accounts (as defined in the New York Uniform Commercial Code ("***UCC***") § 9-102(a)(29)) of the Debtors, all general intangibles (as defined in the UCC § 9-102(a)(42)), and all of the equity interests in and assets of each of the Debtors (except for the equity interests in HoldCo).

29.     The JCF Lender, as the Collateral Agent for the JCF Loan, perfected the security interests in the Pledged Collateral by filing eight UCC-1 financing statements against each of the Debtors in the respectively applicable jurisdictions of Delaware, Texas or Louisiana:

(a)     A UCC-1 financing statement against HoldCo in favor of the JCF Lender (as secured party) for all assets of HoldCo, whether then existing or thereafter arising, initial filing number 2013 2806487, file date 9/30/2013, filed in the state of Delaware.

(b)     A UCC-1 financing statement against Affirmative Insurance Group, Inc. in favor of the JCF Lender (as secured party) for all assets of Affirmative Insurance Group, Inc., whether then existing or thereafter arising, file number 13-0031134036, file date 9/30/2013, filed in the state of Texas.

(c)     A UCC-1 financing statement against Affirmative Insurance Services, Inc. in favor of the JCF Lender (as secured party) for all assets of Affirmative Insurance Services, Inc., whether then existing or thereafter arising, file number 13-0031134399, file date 9/30/2013, filed in the state of Texas.

(d)     A UCC-1 financing statement against Affirmative Management Services, Inc. in favor of the JCF Lender (as secured party) for all assets of Affirmative Management Services, Inc., whether then existing or thereafter arising, file number 13-0031134773, file date 9/30/2013, filed in the state of Texas.

(e)     A UCC-1 financing statement against Affirmative Services, Inc. in favor of the JCF Lender (as secured party) for all assets of Affirmative Services, Inc., whether then existing or thereafter arising, file number 13-0031135168, file date 9/30/2013, filed in the state of Texas.

(f)     A UCC-1 financing statement against Affirmative Underwriting Services, Inc. in favor of the JCF Lender (as secured party) for all assets of Affirmative Underwriting Services, Inc., whether then existing or thereafter arising, file number 13-0031135300, file date 9/30/2013, filed in the state of Texas.

(g)     A UCC-1 financing statement against USAgencies Management Services, Inc. in favor of the JCF Lender (as secured party) for all assets of USAgencies Management Services, Inc., whether then existing or thereafter arising, file number 17-1395370, file date 10/03/2013, filed in the state of Louisiana.  On March 18, 2015, an amendment to the UCC-1 financing statement, file number 17-1413220, was filed in the state of Louisiana, which provided that the name of USAgencies Management Services, Inc. had been changed to Affirmative General Agency, Inc.

(h)     A UCC-1 financing statement against USAgencies, L.L.C. in favor of the JCF Lender (as secured party) for all assets of USAgencies, L.L.C., whether then existing or thereafter arising, file number 17-1395371, file date 10/03/2013, filed in the state of Louisiana.  On March 18, 2015, an amendment to the UCC-1 financing statement, file number 17-1413395, was filed in the state of Louisiana, which provided that the name of USAgencies, L.L.C. had been changed to Affirmative, L.L.C.

30.     A true and correct copy of each of the UCC financing statements referenced in paragraph 29 hereof is attached hereto collectively as ***Exhibit "D".***

31.     On June 12, 2015, HoldCo, Affirmative Underwriting Services, Inc., Affirmative Insurance Services, Inc., Affirmative General Agency, Inc., Affirmative Management Services, Inc. and Affirmative Services, Inc. (the "***Sellers***") entered into that certain stock and asset purchase agreement (the "***Purchase Agreement***") with Confie Seguros Holding II Co. ("***Confie***"), whereby the Sellers agreed to sell certain of their assets (as further outlined in the Purchase Agreement) to Confie.  All of the cash portion of the consideration paid by Confie at the closing of such sale (called the "Estimated Cash Payment" in the Purchase Agreement and herein) constituted proceeds of the Pledged Collateral.

32.     On June 30, 2015, the closing of the transactions contemplated by the Purchase Agreement occurred.  In connection with such closing, Confie remitted directly, as part of the Estimated Cash Payment, funds to Credit Suisse AG in a sufficient amount to repay the First Lien Loan in full, and Credit Suisse AG released all of the liens and security interests granted in connection with the First Lien Loan.

33.     On June 30, 2015, in connection with the sale to Confie under the Purchase Agreement, HoldCo and the JCF Lender, as Administrative Agent, Collateral Agent, and lender, entered into a consent and waiver, a true and correct copy of which is attached hereto as ***Exhibit "E"*** (the "***Consent and Waiver***").  Pursuant to the Consent and Waiver, the JCF Lender agreed to release its liens on and security interests in certain of its Pledged Collateral, as further outlined in Schedule I of the Consent and Waiver, in order to effectuate the sale to Confie.  In exchange for the JCF Lender agreeing to release its liens on and security interests in certain of its Pledged Collateral, upon information and belief, on June 30, 2015, (1) Confie wired directly to the JCF Lender $3,137,000 of the Estimated Cash Payment, which funds were applied by the JCF Lender to pay down the JCF Loan, and (2) Confie wired to HoldCo $10,588,388.61 of the Estimated Cash Payment, which HoldCo deposited into the DACA 1 Account.  At all relevant times, the

only funds in the DACA 1 Account constituted this deposit or other proceeds of Pledged Collateral.  UMB, HoldCo, and the JCF Lender entered into a Deposit Account Control Agreement, dated as of July 15, 2015 (the "**DACA 1**"), for the DACA 1 Account, a true and correct copy of which is attached hereto as **Exhibit "F**."

34.     At all relevant times, the funds in the DACA 1 Account constituted part of the JCF Lender's Pledged Collateral, and the JCF Lender had a validly perfected, first priority security interest in the DACA 1 Account and the funds deposited therein (the "**DACA 1 Collateral**").

35.     In connection with the sale to Confie under the Purchase Agreement, Confie also wired directly to AIC $20 million of the Estimated Cash Payment.  These funds also constituted proceeds of the Pledged Collateral and were transferred to AIC as a capital contribution by HoldCo to AIC.  Neither AIC nor the Illinois Department of Insurance was required to consent to the Purchase Agreement or any of the transactions contemplated thereunder.

36.     Also in accordance with the terms of the Consent and Waiver, two days after the Closing Date, on July 2, 2015, HoldCo withdrew an amount equal to $8,572,000 from the DACA 1 Account and deposited it into the DACA 2 Account.  Upon information and belief, at the time of such deposit, no other funds were in the DACA 2 Account.  UMB, HoldCo, and the JCF Lender also entered into a Deposit Account Control Agreement, dated as of July 24, 2015 (the "**DACA 2**"), with respect to the DACA 2 Account, a true and correct copy of which is attached hereto as **Exhibit** "**G**."

37.     At all relevant times, the funds in the DACA 2 Account constituted part of the JCF Lender's Pledged Collateral, and the JCF Lender had a validly perfected, first priority security interest in the DACA 2 Account and the funds deposited therein (the "**DACA 2 Collateral**").

38.     On September 1, 2015, the JCF Lender exercised its control rights over the DACA 2 Account by providing written notice to UMB, informing UMB that the JCF Lender had exclusive access to and disposition over the funds in the DACA 2 Account and that UMB was only to honor or follow any instruction that it received regarding the DACA 2 Account from the JCF Lender (the "***Control Notice***").  A true and correct copy of the Control Notice is attached as ***Exhibit*** "***H***."

39.     On September 16, 2015, the Circuit Court of Cook County, Illinois, County Department, Chancery Division entered an order of rehabilitation, which appointed Anne Melissa Dowling, acting director of insurance of the State of Illinois, as the Illinois rehabilitator of AIC, and placed AIC into rehabilitation (the "***Order of Rehabilitation***").  A true and correct copy of the Order of Rehabilitation is attached as ***Exhibit*** "***I***."  Pursuant to the Order of Rehabilitation, the Illinois Liquidator was given control over AIC's assets.

40.     On October 5, 2015, the Nineteenth Judicial District Court of the Parish of East Baton Rouge, Louisiana, entered an order placing Affirmative Casualty Insurance Company ("***ACIC***") and Affirmative Direct Insurance Company ("***ADIC***") into rehabilitation.  Both ACIC and ADIC are direct subsidiaries of AIC, and the Illinois Liquidator consented to entry of such order.

41.     On October 9, 2015, the JCF Lender sent HoldCo a notice of event of default and acceleration (the "***Notice of Default***"*)*, informing HoldCo that an Event of Default, as defined in the JCF Credit Agreement, had occurred under subparagraphs g and h of Article VII of the JCF Credit Agreement as a result of the entry of the Order of Rehabilitation.   A true and correct copy of the Notice of Default is attached as ***Exhibit*** "***J***."  The Notice of Default further advised HoldCo that, as a result of the Event of Default, all amounts that were due and owing by HoldCo under the JCF Credit Agreement were due and payable in full to the JCF Lender.

42.     Also on October 9, 2015, the Illinois Office of the Special Deputy Receiver, representing the Illinois Liquidator, sent a letter to UMB (the "*Letter*") demanding that UMB wire $8,572,000 from the DACA 2 Account to AIC as payment for the money that HoldCo allegedly owed to AIC in connection with the 2014 consolidated federal income tax return of HoldCo and its consolidated subsidiaries (including AIC) and the unsecured contractual obligations owed by and owing to the members of the consolidated tax group to which HoldCo and AIC belong pursuant to a tax allocation agreement among the members.  A true and correct copy of the Letter is attached as *Exhibit* "*K*."

43.     On October 13, 2015, the Illinois Liquidator filed a complaint in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, naming UMB and JCF as Defendants (the "*Illinois Complaint*").  A true and correct copy of the Illinois Complaint is attached as *Exhibit* "*L*."  The JCF Lender has never been served with the Illinois Complaint, and UMB has been dismissed from the case.

44.     On October 29, 2015, the Circuit Court for the Thirtieth Judicial Circuit, Ingham County, Michigan, entered an order placing Affirmative Insurance Company of Michigan ("*AICM*") into rehabilitation.  AICM is a direct subsidiary of AIC, and the Illinois Liquidator consented to entry of such order.

45.     Each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware on October 14, 2015 (the "*Petition Date*").

46.     As of the Petition Date, the aggregate amount of principal and interest owed to the JCF Lender on the JCF Loan was $15,638,281.00.  In addition, accrued and unpaid fees and expenses payable under the JCF Credit Agreement as of the Petition Date totaled $313,473.94.

47.     As of the date of the filing of this complaint, the funds in the DACA 1 Account and the DACA 2 Account continue to be held at UMB under the exclusive control of the JCF Lender.

48.     On March 10, 2016, this Court entered an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code [Docket No. 337].

49.     On March 10, 2016, the Office of the United States Trustee appointed the Interim Trustee as the interim chapter 7 trustee for each of the Debtors [Docket No. 338].

50.     On March 24, 2016, the Circuit Court of Cook County, Illinois, County Department, Chancery Division entered the Liquidation Order, placing AIC into liquidation.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment That the JCF Lender Holds a Validly Perfected, First Priority Security Interest in and Lien on the DACA 1 Collateral

51.     The JCF Lender incorporates by reference the allegations set forth in paragraphs 1 through 50 hereof, as if fully set forth herein.

52.     The DACA 1 Account is a deposit account established in HoldCo's name.  The funds in the DACA 1 Account were received by HoldCo as part of the consideration paid by Confie in connection with the Purchase Agreement and constitute property of HoldCo's estate within the meaning of section 541(a) of the Bankruptcy Code.

53.     The Debtors granted to the JCF Lender a security interest in and lien on all the Pledged Collateral, which included all proceeds thereof and all funds in the DACA 1 Account, and the JCF Lender gave value in exchange for such security interests and liens.

54.     At all relevant times, the funds in the DACA 1 Account constituted part of the JCF Lender's Pledged Collateral, and the JCF Lender had a validly perfected, first priority security interest in the DACA 1 Account and the DACA 1 Collateral.

55.     Pursuant to the DACA 1, the JCF Lender had control over the DACA 1 Collateral.  Prior to the Petition Date, HoldCo withdrew millions of dollars from the DACA 1 Account to pay claims of HoldCo's trade creditors, to fund retainers to the Debtors' professionals, and otherwise to fund the Debtors' operations.  These withdrawals from the DACA 1 Account included the following withdrawals on October 9, 2015: withdrawal of $450,000 to pay a retainer to McDermott Will & Emery LLP (the "*McDermott Retainer*"), withdrawal of $50,000 to pay a retainer to BDO USA, LLP (the "*BDO Retainer*"), and withdrawal of $25,000 to pay a retainer to Polsinelli PC (the "*Polsinelli Retainer*," and collectively with the McDermott Retainer and the BDO Retainer, the "*Retainers*").  Each of the Retainers, to the extent the funds were not applied prior to the Petition Date to pay the fees and expenses of the Debtors' professionals, remains property of HoldCo's estate pursuant to section 541(a) of the Bankruptcy Code.

56.     Upon information and belief, as of the Petition Date, the unapplied balance of the McDermott Retainer was $251,065.19, the unapplied balance of the BDO Retainer was $48,904.00, and the unapplied balance of the Polsinelli Retainer was $25,000.00.  The JCF Lender never released its lien on any of the funds comprising the Retainers, and the Retainers constitute part of the Pledged Collateral.

57.     Upon information and belief, as of the date hereof, the amount of funds in the DACA 1 Account is approximately $260,000.

58.     Except to the extent that the DACA 1 Collateral was used to pay claims of HoldCo, HoldCo never granted to any entity other than the JCF Lender any interest in the DACA 1 Collateral.  Even if HoldCo had purported to grant an interest in the DACA 1 Collateral to any other entity or had purported to create or grant rights in favor of any other entity with respect to

the DACA 1 Collateral, any such interest or rights would be subject and subordinate to the preexisting rights of the JCF Lender in and to the DACA 1 Collateral.

59.     Pursuant to the DACA 1, HoldCo, UMB, and the JCF Lender agreed that UMB would comply with the JCF Lender's instructions regarding disposition of the funds in the DACA 1 Account, without further consent by HoldCo.

WHEREFORE, the JCF Lender demands a judgment of this Court on its First Claim for Relief declaring that the JCF Lender has a validly perfected, first priority lien on and security interest in the DACA 1 Collateral and granting such other and further relief as the Court may deem just and proper.

## SECOND CLAIM FOR RELIEF

### Declaratory Judgment That the JCF Lender Holds a Validly Perfected, First Priority Security Interest in and Lien on the DACA 2 Collateral

60.     The JCF Lender incorporates by reference the allegations set forth in paragraphs 1 through 59 hereof, as if fully set forth herein.

61.     By the Letter, the Illinois Liquidator has asserted that AIC has an interest in the DACA 2 Collateral that is superior to that of the JCF Lender.  As such, an actual controversy exists between the JCF Lender and the Illinois Liquidator, making declaratory relief appropriate pursuant to 28 U.S.C. § 2201.

62.     The DACA 2 Account is a deposit account established in HoldCo's name.  The funds in the DACA 2 Account were received by HoldCo as part of the consideration paid by Confie in connection with the Purchase Agreement and constitute property of HoldCo's estate within the meaning of section 541(a) of the Bankruptcy Code.

63.     The Debtors granted to the JCF Lender a security interest in and lien on all the Pledged Collateral, which included all proceeds thereof and the DACA 2 Collateral, and the JCF Lender gave value in exchange for such security interests and liens.

64.     Pursuant to the DACA 2, HoldCo, UMB, and the JCF Lender agreed that UMB would comply with the JCF Lender's instructions regarding disposition of the funds in the DACA 2 Account, without further consent by HoldCo.

65.     There are no other liens on the DACA 2 Collateral.

66.     No entity other than HoldCo, as the owner, and the JCF Lender, as the secured party, has an interest in the DACA 2 Collateral.

67.     HoldCo never granted to AIC any interest in the DACA 2 Collateral.  HoldCo never created or granted any rights in favor of AIC with respect to the DACA 2 Collateral.  Even if HoldCo had purported to grant an interest in the DACA 2 Collateral to AIC or had purported to create or grant rights in favor of AIC with respect to the DACA 2 Collateral, any such interest or rights would be subject and subordinate to the preexisting rights of the JCF Lender in and to the DACA 2 Collateral.  The JCF Lender never consented to AIC having any rights in its Pledged Collateral (which includes the DACA 2 Collateral) and never agreed to subordinate its security interest in its Pledged Collateral to any claims of AIC.

WHEREFORE, the JCF Lender demands a judgment of this Court on its Second Claim for Relief declaring that the JCF Lender has a validly perfected, first priority lien on and security interest in the DACA 2 Collateral and granting the JCF Lender such other and further relief as the Court may deem just and proper.

## THIRD CLAIM FOR RELIEF

### Declaratory Judgment That the JCF Lender Holds a Validly Perfected, First Priority Security Interest in and Lien on the Hallberg Judgment

68.    The JCF Lender incorporates by reference the allegations set forth in paragraphs 1 through 67 hereof, as if fully set forth herein.

69.    The Hallberg Judgment was entered in 2008 and amended in 2009.  As of the date that the JCF Lender made the JCF Loan, HoldCo was continuing its efforts to collect on the Hallberg Judgment.

70.    In 2013, the Debtors granted to the JCF Lender a security interest in and lien on all the Pledged Collateral, which included all general intangibles.  The Hallberg Judgment constituted a "general intangible" within the meaning of UCC § 9-102(a)(42) as of the date the JCF Lender made the JCF Loan, and the JCF Lender gave value in exchange for such security interests and liens.

71.    There are no other liens on the Hallberg Judgment.

72.    No entity other than HoldCo and its subsidiaries, as the judgment creditors, and the JCF Lender, as the secured party, has an interest in the Hallberg Judgment.

WHEREFORE, the JCF Lender demands a judgment of this Court on its Third Claim for Relief  declaring that the JCF Lender has a validly perfected, first priority lien on and security interest in the Hallberg Judgment and granting such other and further relief as the Court may deem just and proper.

## FOURTH CLAIM FOR RELIEF

### Relief From the Automatic Stay to Enable the JCF Lender to Enforce Remedies With Respect to the DACA 1 Collateral, DACA 2 Collateral, and the Hallberg Judgment

73.     The JCF Lender incorporates by reference the allegations set forth in paragraphs 1 through 72, as if fully set forth herein.

74.     The DACA 1 Collateral, the DACA 2 Collateral, and the Hallberg Judgment are the only collateral remaining to satisfy the JCF Loan.  The unpaid amount of the JCF Loan exceeds the total value of the the DACA 1 Collateral, the DACA 2 Collateral, and the Hallberg Judgment.  Accordingly, HoldCo has no equity in the DACA 1 Collateral, the DACA 2 Collateral, and the Hallberg Judgment.

WHEREFORE, the JCF Lender demands a judgment of the Court on its Fourth Claim for Relief granting the JCF Lender relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code so that the JCF Lender may exercise its remedies with respect to the DACA 1 Collateral, the DACA 2 Collateral, and the Hallberg Judgment and granting the JCF Lender such other and further relief as is just.

## FIFTH CLAIM FOR RELIEF

### Directing the Interim Trustee and UMB to Turn Over the DACA 1 Collateral, DACA 2 Collateral, and Proceeds of the Hallberg Judgment to the JCF Lender

75.     The JCF Lender incorporates by reference the allegations set forth in paragraphs 1 through 74, as if fully set forth herein.

76.     DACA 1 and DACA 2 permit UMB to withhold any funds in its possession upon HoldCo's filing of a bankruptcy or insolvency proceeding and to file an action if another party asserts an interest in the DACA 1 Collateral or DACA 2 Collateral.   Accordingly, as a result of the pendency of the Debtors' chapter 7 cases and the filing of the Illinois Complaint, as well as

the receipt of the Letter, UMB may choose not to honor directions from the JCF Lender pursuant to the terms of DACA 1 and DACA 2 to turn over funds in the DACA 1 Account and the DACA 2 Account unless the Court enters an order directing it to do so.

77.     The Interim Trustee may demand the return to HoldCo's estate of the unapplied portions of the Retainers.  To the extent that such funds are returned to and held by the Interim Trustee for the benefit of HoldCo's estate, such funds should be turned over to the JCF Lender, as the entity with the first priority security interest in such funds.

WHEREFORE, the JCF Lender demands a judgment of the Court on its Fifth Claim for

Relief directing UMB and the Interim Trustee, as applicable, to turn over any funds constituting

the DACA 1 Collateral (including, without limitation, the funds in the DACA 1 Account and any

Retainers returned to the HoldCo estate), the DACA 2 Collateral, and proceeds of the Hallberg

Judgment and granting the JCF Lender such other and further relief as is just.


Dated:    March 31, 2016
          Wilmington, Delaware

/s/ Zachary I. Shapiro
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Andrew M. Dean (No. 6147)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Telephone:  (212) 310-8541
Facsimile:   (212) 310-8007

Allison M. Brown
WEIL, GOTSHAL & MANGES LLP
17 Hulfish Street
Princeton, New Jersey 08542
Telephone:  (609) 986-1104
Facsimile:   (609) 986-1199

*Attorneys for Plaintiff JCF AFFM Debt
Holdings, L.P.*