## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------ x

*In re*

AFFIRMATIVE INSURANCE
HOLDINGS, INC., *et al.*,

        Debtors.[1]

------------------------------------------------ x

JCF AFFM Debt Holdings L.P.,

        Plaintiff,

      v.

AFFIRMATIVE INSURANCE
HOLDINGS, INC., AFFIRMATIVE
MANAGEMENT SERVICES, INC.,
AFFIRMATIVE SERVICES, INC.,
AFFIRMATIVE UNDERWRITING
SERVICES, INC., AFFIRMATIVE
INSURANCES SERVICES, INC.,
AFFIRMATIVE GENERAL AGENCY,
INC., AFFIRMATIVE INSURANCE
GROUP, INC., AFFIRMATIVE L.L.C.,
ANNE MELISSA DOWLING, ACTING
DIRECTOR OF INSURANCE OF THE
STATE OF ILLINOIS, solely as Liquidator of
AFFIRMATIVE INSURANCE COMPANY,
and DON A. BESKRONE, solely as
TRUSTEE,

        Defendants.

------------------------------------------------ x

Chapter 7

Case No. 15-12136 (CSS)

(Jointly Administered)

Adv. Proc. No. 16-50425 (CSS)

---

[1]    The "Debtors," together with the last four digits of each Debtor's federal tax identification number, are Affirmative Insurance Holdings, Inc. (0432); Affirmative Management Services, Inc. (7252); Affirmative Services, Inc. (7255); Affirmative Underwriting Services, Inc. (7250); Affirmative Insurance Services, Inc. (8823); Affirmative General Agency, Inc. (2345); Affirmative Insurance Group, Inc. (7246); and Affirmative, L.L.C. (2347).

ANNE MELISSA DOWLING, ACTING          x
DIRECTOR OF INSURANCE OF THE          :
STATE OF ILLINOIS, solely as Liquidator :
of AFFIRMATIVE INSURANCE            :
COMPANY,                            :
                                    :
            Counterplaintiff,        :
                                    :
      v.                            :
                                    :
JCF AFFM DEBT HOLDINGS L.P.,         :
                                    :
            Counterdefendant.        :
                                    x
----------------------------------------    x
ANNE MELISSA DOWLING, ACTING          :
DIRECTOR OF INSURANCE OF THE          :
STATE OF ILLINOIS, solely as Liquidator :
of AFFIRMATIVE INSURANCE            :
COMPANY,                            :
                                    :
            Crossplaintiff,          :
                                    :
      v.                            :
                                    :
AFFIRMATIVE INSURANCE               :
HOLDINGS INC., and DON A.           :
BESKRONE, solely as TRUSTEE,         :
                                    :
            Crossdefendants.          :
----------------------------------------    x

### BRIEF IN SUPPORT OF MOTION OF DEFENDANT AND COUNTERPLAINTIFF ANNE MELISSA DOWLING, ACTING DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AS LIQUIDATOR OF AFFIRMATIVE INSURANCE COMPANY, TO DISMISS ADVERSARY PROCEEDING FOR LACK OF SUBJECT MATTER JURISDICTION, OR FOR ABSTENTION

Mark Minuti (DE Bar No. 2659)            Faye B. Feinstein, Esq.
Teresa K.D. Currier (DE Bar No. 3080)    Christopher Combest , Esq.
**SAUL EWING LLP**                        Lauren Beslow, Esq.
1201 North Market Street, Suite 2300      **QUARLES & BRADY LLP**
P.O. Box 1266                            300 North LaSalle Street, Suite 4000
Wilmington, DE 19899                     Chicago, IL  60654
(302) 421-6840                           (312) 715-5000

*Counsel to Anne Melissa Dowling, Acting Director of Insurance of the State of Illinois, in her capacity as court appointed Liquidator of Affirmative Insurance Company*

Dated:  July 22, 2016

654031.1 07/22/2016

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

SUMMARY OF ARGUMENT ...............................................................................5

FACTUAL AND PROCEDURAL BACKGROUND................................................6

 A. The Illinois Court Rehabilitation Proceedings.........................................6

 B. The Tax Allocation Agreement ...............................................................7

 C. The DACA 2 Account ..............................................................................8

 D. The Illinois Court Complaint..................................................................12

 E. The Chapter 11 Proceedings and the Adversary Complaint................13

 F. The Settlement Agreement ...................................................................14

STANDARD OF REVIEW ..................................................................................15

ARGUMENT .......................................................................................................16

 A. The Claims Should Be Dismissed for Lack of Subject Matter
  Jurisdiction.............................................................................................16

  1. The Court lacks jurisdiction because the Claims are not
   "core" proceedings..................................................................17

  2. The Court does not have "related to" jurisdiction over the
   Claims. .....................................................................................19

 B. The Court Should Abstain from Hearing the Remaining Claims
  Pursuant to 11 U.S.C. § 1334(c)(1).......................................................22

 C. The Court Should Abstain Under *Burford v. Sun Oil Co.* ....................26

 D. Prudence Dictates That This Court Refrain from Exercising
  Jurisdiction over Matters Governed by Illinois Law and Which Are
  Pending in the Illinois Court..................................................................27

CONCLUSION....................................................................................................29

TABLE OF AUTHORITIES

# Cases

*Adams v. Prudential Sec., Inc. (In re Found. for New Era Philanthropy),*
    201 B.R. 382 (Bankr. E.D. Pa. 1996) ...........................................................21

*Asbestos Workers Local 14 v. Hargrove,*
    1993 WL 183990 (E.D. Pa. 1993) ...............................................................28

*Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.),*
    372 F.3d 154 (3d Cir. 2004).........................................................................17

*Broadhollow Funding, LLC v. Bank of Am., N.A.*
*(In re Am. Home Mortg. Holdings, Inc.),*
    390 B.R. 120 (Bankr. D. Del. 2008) ........................................................23, 24

*Burford v Sun Oil Co,*
    319 U.S. 315 (1943).................................................................................26, 27

*Dailey v. Nat'l Hockey League,*
    987 F.2d 172 (3d Cir. 1993).........................................................................28

*DHP Holdings II Corp. v. Peter Skop Industries, Inc.*
*(In re DHP Holdings II Corp.),*
    435 B.R. 220 (Bankr. D. Del. 2010) .............................................................23

*Feige v. Sechrest,*
    90 F.3d 846 (3d Cir. 1996)...........................................................................26

*Grode v. Mutual Fire, Marine & Inland Ins. Co.,*
    8 F.3d 953 (3d Cir. 1993).............................................................................26

*Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),*
    172 B.R. 748 (S.D.N.Y. 1994)......................................................................24

*In re American Home Mortg. Holding,*
    477 B.R. 517 (Bankr. D. Del. 2012) ..................................................... Passim

*In re DVI, Inc.,*
    324 B.R. 548 (Bankr. D. Del. 2005) .............................................................21

*In re Exide Techs.,*
    544 F.3d 196 (3d Cir. 2008)....................................................................17, 18

*In re Philippi,*
    2006 WL 1949020 (D.N.J. July 11, 2006).....................................................28

*In re RNI Wind Down Corp.,*
    348 B.R. 286 (Bankr. D. Del. 2006) .............................................................23

*In re Solyndra, LLC,*
    2015 WL 6125246 (Bankr. D. Del 2015) ......................................................16

*In re The Fairchild Corp.,*
    452 B.R. 525 (Bankr. D. Del. 2011) ..................................................15

*In re W.R. Grace & Co.,*
    591 F.3d 164 (3d Cir. 2009)..........................................................19

*Kenner Acquisitions, LLC v. BellSouth Telecommunications, Inc.,*
    2007 WL 625833 (E.D. La. Feb. 26, 2007) .................................27

*Levy v. Lewis,*
    635 F.2d 960 (2d Cir. 1980)...................................................27, 28

*Lincoln Towers Inc. Agency, Inc. v. Boozell,*
    684 N.E.2d 900 (1997)............................................................ 26-27

*Meadowlands Commc'n, Inc. v. Banker's Trust Co.,*
    79 B.R. 198 (D.N.J. 1987) .........................................................18

*Pacor, Inc. v. Higgins,*
    743 F.2d 984 (3d Cir. 1984).........................................................19

*Princess Lida of Thurn and Taxis v. Thompson,*
    305 U.S. 456, 466 (1939) ............................................................27

*Richardson v. Monaco, et al. (In re Summit Metals, Inc.),*
    477 B.R. 484 (Bankr. D. Del. 2012) ..............................................5

*Royal Bank v. Selig (In re Selig),*
    135 B.R. 241 (Bankr. E.D. Pa. 1992) .........................................21

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp.,*
    181 F.3d 410 (3d Cir. 1999)............................................................9

*Solmonese v. Shyamsundar (In re AmCad Holdings, LLC),*
    2016 WL 3412289 (Bankr. D. Del. June 14, 2016) .................... 5-6

*Wagner v. Amwest Ins. Group, Inc., (In re Amwest Ins. Group, Inc.),*
    285 B.R. 447 (Bankr. C.D. Cal. 2002).........................................26

*Zambelli Fireworks Manufacturing Co., Inc.v. Wood,*
    592 F.3d 412 (3rd Cir. 2010) .........................................................5

## Statutes

215 ILCS 5/1 ....................................................................................6

215 ILCS 5/187..................................................................................6

28 U.S.C. § 1334...................................................................16, 22, 24

28 U.S.C. § 1334(a)-(b) ...................................................................16

28 U.S.C. § 1334(c)(1).................................................................4, 22

28 U.S.C. § 157.................................................................................16

28 U.S.C. § 157(b)(2)(K) ....................................................................................18

# Rules

Fed. R. Bankr. P. 4001 ......................................................................................19

Fed. R. Bankr. P. 9014 ......................................................................................19

Fed. R. Civ. P. 12(b)(1) ...............................................................................15, 17

Fed. R. Civ. P. 12(b)(6) ........................................................................................5

## INTRODUCTION

This Adversary Proceeding is nothing more than a dispute between two creditors, Anne Melissa Dowling (the "AIC Liquidator"), court-appointed Liquidator of Affirmative Insurance Company ("AIC") and JCF AFFM Debt Holdings, L.P. ("JCF"), the lender to Debtor Affirmative Insurance Holdings, Inc. ("AIH"), over funds in which none of the Debtors claim an interest, namely the $8.572 million in funds (the "DACA 2 Funds") held in an account (the "DACA 2 Account") maintained at UMB Bank, N.A. ("UMB"). The funds were placed in the DACA 2 Account by AIH, the ultimate parent of AIC (Complaint for Declaratory Judgment [D.I. 1] (the "Complaint"), ¶ 22), in connection with its obligations to AIC under a Consolidated Tax Allocation Agreement (the "Tax Allocation Agreement"; *see* Compl., Ex. L (Exhibit A thereto)). AIH, as the ultimate parent, filed consolidated tax returns for the affiliated group consisting of Debtors and certain non-debtor entities, including AIC. Under the Tax Allocation Agreement, for each year in which a subsidiary's net operating losses ("NOLs") were used to offset the income of the affiliated group, AIH was obligated to pay such subsidiary the dollar amount of the tax savings generated by the use of its NOLs. For the 2014 tax year, AIC's share of the group's tax savings was estimated to be the amount deposited to the DACA 2 Account.

The DACA 2 Account was created with JCF's consent, in connection with the Debtors' sale of their managing general agencies to Confie Seguros Holding II Co., for the purpose of ensuring that the 2014 payment to AIC under the Tax Allocation Agreement could be made. JCF now contests that this was the purpose for the segregation of the DACA 2 Funds, and argues that it did not agree to the use of the funds

at all, although it does not offer any alternative purpose for the creation of the DACA 2 Account.

JCF's only argument as to why it is entitled to the DACA 2 Funds is that it has a security interest in the Debtors' assets which covers the funds (Compl., ¶¶ 28, 37).  It tries to use this allegation to create jurisdiction by fashioning this case as a lien validity and priority dispute.  The First, Third, Fourth, and Fifth Claims of the complaint (the "Complaint") filed in the captioned adversary proceeding (the "Adversary Proceeding") seek relief as to the DACA 1 Collateral and the Hallberg Judgment (both as defined in the Complaint) , in neither of which does the AIC Liquidator claim an interest.  Moreover, the settlement agreement reached between JCF and the Trustee, approved by this Court on June 11, 2016, resolves all of the disputes between JCF and the estates with respect to the DACA 1 Account, DACA 2 Account, and the Hallberg Judgment, JCF has released all claims to the DACA 1 Account and the Hallberg Judgment, the Trustee has released the estates' claims to the DACA 2 Account, and JCF is therefore required to dismiss the Trustee as a defendant.  Accordingly, this Motion seeks dismissal of the Complaint as a whole, since the remaining issues involve solely a dispute between two non-Debtors as to property which the Trustee has conceded is not property of these estates.

The Complaint alleges three Claims for Relief which relate to the DACA 2 Funds: (i) a claim for declaratory judgment that JCF has a security interest in the DACA 2 Funds (Second Claim); (ii) a claim for relief from the automatic stay to enforce its rights with respect to the DACA 2 Funds (Fourth Claim); and (iii) a claim for turnover of the DACA 2 Funds from the Trustee and UMB (which is not a named defendant) (Fifth Claim).  The

2

allegations of the Second, Fourth, and Fifth Claims for Relief as they relate to the DACA 2 Funds are referred to collectively herein as the "Remaining Claims".

Now that the Trustee has waived and released any claim he may have had to the DACA 2 Account, the only remaining claim against the AIC Liquidator is the Second Claim for declaratory judgment. Fundamentally, this is primarily a breach of contract dispute, namely whether the AIC Liquidator is entitled to the funds in the DACA 2 Account under the terms of the Consent and Waiver (defined below) and other agreements made by JCF, or whether they belong to JCF under the JCF Credit Agreement (defined below). Breach of contract disputes involve only issues of state law that can and should be decided by a state court. Here, there is a state court that is poised to decide these issues; before the bankruptcy was filed, the AIC Liquidator filed a complaint in the Illinois Court (defined below) against JCF seeking a determination that AIC was entitled to the DACA 2 Funds.

More importantly, the Debtors and the Trustee have no interest in the funds in the DACA 2 Account. To the extent AIH or its estate ever had any interest in the DACA 2 Funds, its interest was no more than bare legal title, and even that interest has now been released by the Trustee pursuant to the Settlement Agreement approved by order of the Court [D.I. 439] on July 11, 2016. Pursuant to the Settlement Agreement, the DACA 2 Funds will not remain in AIH's or any other Debtor's estate; they will be released to either JCF or the AIC Liquidator. Accordingly, the determination as to which creditor receives the DACA 2 Funds will have no effect on the administration of the Debtors' estates.

Finally, any dispute regarding the competing interests of JCF and the Liquidator in the DACA 2 Account will not alter the total amount to be distributed from the Debtors' estates, but will only determine to which of those creditors it is distributed, and, correspondingly, which of those two creditors' deficiency claims will be allowed. Although both the AIC Liquidator and JCF filed claims against the estate asserting that each has an unsecured deficiency claim against the Debtors to the extent either one does not receive the DACA 2 Funds, the fact that the Trustee may have to make a distribution to either JCF or the AIC Liquidator on account of its unsecured deficiency claims will not alter the distribution priorities or the amount to be distributed from the estates and, therefore, is not enough to vest this Court with jurisdiction over this adversary action.

Because the Remaining Claims are nothing more than a dispute between two creditors which will have no effect on the administration of these estates, this proceeding is not a "core" proceeding; nor does this Court have "related to" jurisdiction. Accordingly, this Court should grant the AIC Liquidator's motion to dismiss this case for lack of jurisdiction.

Even if this Court does not dismiss the Remaining Claims, pursuant to 28 U.S.C. § 1334(c)(1), it should abstain from hearing them in favor of the Illinois Court (defined below) overseeing the liquidation proceedings for AIC. This case warrants permissive abstention for many reasons, including that state law issues predominate over bankruptcy issues (in fact, there are no longer any bankruptcy issues at play in the Complaint), there is a pending proceeding in state court, and the only parties in the proceeding are non-debtors.

## SUMMARY OF ARGUMENT

(1)     The Court does not have subject matter jurisdiction over the Remaining Claims in the Complaint as they (i) do not arise in or under title 11 of the United States Code; (ii) are not related to a case under title 11 of the United States Code; and (iii) are not core proceedings.

(2)     Even if this Court has "related to" jurisdiction, it should abstain from hearing the claims in the Complaint asserted against the AIC Liquidator in favor of the Illinois Court (defined below) overseeing the rehabilitation proceedings for AIC.

## THIS COURT SHOULD DECIDE THE MOTION TO DISMISS OR ABSTAIN PRIOR TO CONSIDERING JCF'S MOTION TO DISMISS LIQUIDATOR'S COUNTERCLAIMS

On June 22, 2016, JCF filed a Motion to Dismiss Liquidator's Counterclaims under Fed. R. Civ. P. 12(b)(6) [D.I. 19] (the "12(b)(6) Motion to Dismiss"). Contemporaneously with the filing of this Motion to Dismiss or Abstain, the AIC Liquidator has filed an objection to the 12(b)(6) Motion to Dismiss. "When a court is faced with 12(b)(1) and 12(b)(6) motions to dismiss, as a general rule, the correct procedure is to *consider dismissal on the jurisdictional ground first* for the obvious reason that if the court lacks jurisdiction to hear the case then *a fortiori* it lacks jurisdiction to rule on the merits." *Richardson v. Monaco, et al. (In re Summit Metals, Inc.)*, 477 B.R. 484, 494 (Bankr. D. Del. 2012) (emphasis added); *see also Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) ("[f]ederal courts are courts of limited jurisdiction, and when there is a question as to our authority to hear a dispute, it is incumbent upon the courts to resolve such doubts, one way or the other, *before proceeding to a disposition on the merits*") (internal citations omitted; emphasis added); *Solmonese v. Shyamsundar (In re AmCad Holdings, LLC)*, Adv. No. 15-51979,

2016 WL 3412289, at *1 (Bankr. D. Del. June 14, 2016) ("a court may not rule on the merits of a case without first determining that it has…subject matter jurisdiction") (internal citations omitted).

Resolution of the 12(b)(6) Motion to Dismiss will require the Court to consider the merits of the case. As the Motion to Dismiss or Abstain challenges the Complaint on jurisdictional grounds, it is appropriate for the Court to consider and rule on this jurisdictional motion prior to considering the 12(b)(6) Motion to Dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Illinois Court Rehabilitation Proceedings

AIC is a property and casualty stock company organized, and authorized to transact the business of insurance under the laws of the State of Illinois. Its market niche was the issuance of non-standard automobile insurance policies to individuals who could not otherwise obtain insurance. AIC is a wholly-owned subsidiary of Debtor Affirmative Insurance Group, Inc., which is, in turn, a wholly-owned subsidiary of Debtor AIH. (Compl., ¶ 22.) The Director of the Illinois Department of Insurance ("IDI") is charged with regulating Illinois insurance companies in the interest of policy holders and creditors, including by taking necessary enforcement actions against financially-troubled insurers.

On September 16, 2015, the AIC Liquidator, in her capacity as the Acting Director of Insurance of the State of Illinois, filed with the Circuit Court of Cook County, Illinois (the "Illinois Court"), a Verified Complaint for Rehabilitation seeking entry of an Agreed Order of Rehabilitation against AIC, pursuant to the provisions of Article XIII, 215 ILCS 5/187 *et seq.*, of the Illinois Insurance Code (215 ILCS 5/1 *et seq.*). (Compl., ¶¶ 21-22.) In response, also on September 16, 2015, the Illinois Court entered an Agreed

6

Order of Rehabilitation against AIC, that, among other things, affirmed the AIC Liquidator as rehabilitator for AIC. (Compl., ¶ 39.) On March 1, 2016, the AIC Liquidator filed with the Illinois Court her Verified Complaint for Liquidation with a Finding of Insolvency (the "Liquidation Complaint") against AIC, in which, among other relief, she asked to be affirmed as statutory Liquidator of AIC. (Compl., ¶¶ 20, 50.)

On March 24, 2016, the Illinois Court entered its Order of Liquidation with Finding of Insolvency (the "Liquidation Order") (Compl., ¶¶ 20, 50) and a default judgment on the Liquidation Complaint against AIC. The Liquidation Order, among other things, created an estate comprising all of the liabilities and assets of AIC, and enjoined all actions and claims against AIC and its estate except insofar as such actions or claims arise in or are brought in the liquidation proceedings. The Liquidation Order also provides that the AIC Liquidator is vested with title to, and possession and control of, all property of AIC, including all of AIC's causes of action.

## B.    The Tax Allocation Agreement

Since 2004, AIH and certain of its subsidiaries (each a "Subsidiary" and together the "Subsidiaries"), including AIC, have elected to file consolidated federal income tax returns, as memorialized in the Tax Allocation Agreement. Pursuant to that agreement, for each tax year in which a consolidated federal income tax return is filed for the affiliated group (the "Consolidated Group"), if the pro forma return prepared by a subsidiary reflects NOLs that are actually utilized by the Consolidated Group to reduce the overall income tax liability on the consolidated return, the Subsidiary must be paid "cash or securities having a market value equal to the actual tax savings realized by the Consolidated Group. . . ." (Tax Allocation Agreement, §§ 2, 4.)

7

For the Consolidated Group's tax year ending December 31, 2014, the 2014 tax return reported an overall net operating loss of $45,172,492, of which $44,436,645 was allocated to AIC. Accordingly, AIC was entitled to a related payment under Section 4 of the TAA (the "2014 Tax Payment"), which it has not yet received. The AIC Liquidator believes that the amount of the 2014 Tax Payment owed to AIC is not more than $8,572,000; AIC has alleged that funds earmarked for the 2014 Tax Payment were deposited to, and remain in, the DACA 2 Account. The 2014 Tax Payment reflects the amount calculated by AIH's then tax advisors, Dixon Hughes Goodman LLP ("Dixon Hughes"). The 2014 Tax Payment is included in the claim scheduled by AIH in favor of AIC as a non-contingent, undisputed, and liquidated debt. (*See* Schedules of Assets and Liabilities of AIH, Case No. 12-12136 [D.I. 169], at 34, Item 3.).

C.    **The DACA 2 Account**

On September 30, 2013, AIH entered into a credit agreement with JCF as lender (the "JCF Credit Agreement")[2] pursuant to which JCF made a loan to AIH ("JCF Loan"). (Compl., ¶¶ 10, 27.) JCF alleges that in connection with the JCF Loan, Debtors granted JCF a security interest in certain personal property belonging to AIH and other related entities, including deposit accounts. (Compl., ¶¶ 28-29.)

On June 12, 2015, AIH and certain of its subsidiaries entered into an agreement (the "Purchase Agreement") under which Debtors sold (the "MGA Sale") their owned managing general agencies ("MGAs") to Confie. (Compl., ¶ 31.) But, while that network of MGAs could sell insurance policies, they were not themselves certified by any state to conduct the business of insurance; Debtors' MGAs needed AIC to write the

---

[2]    A copy of the JCF Credit Agreement is attached to the Complaint as Exhibit B.

policies that the MGAs sold; therefore, Confie needed AIC to remain an operating insurer in compliance with Illinois law.

Before the MGA Sale, the Director of the IDI[3] conveyed the Department's concern that the proceeds of the sale would be used solely to pay off debt holders – including insider JCF – leaving nothing to satisfy accrued and accruing operational expenses, including the 2014 Tax Payment. (See, e.g., Transcript of testimony of Michael J. McClure, First Meeting of Creditors[4], June 9, 2016, at 123:14 to 124:3 (describing Director's concerns communicated to Debtors and Confie's need for a viable insurance company).)[5]

As alleged in the Counterclaim, to satisfy the concerns of the IDI, Debtors agreed to use a portion of the proceeds of the MGA Sale to, *inter alia*, set aside funds to make the 2014 Tax Payment to AIC. The testimony of Michael J. McClure, Debtors' former chief executive officer, at the recent first meeting of creditors in these converted chapter 7 cases (the "341 Meeting") confirmed those allegations, and more: "[C]ertain sums in DACA 1 . . . were *earmarked* for operating expenses that [Debtors] knew had to be paid . . . . And so with that, with those schedules [*i.e.*, to the Consent and Waiver] . . . there's all kinds of detail around that. But there was *an agreement made with Flowers over specific sums of money on the close . . . that were going to be paid out of DACA 1 . . . .*

---

[3]     At that time, the Director of the IDI was Andrew Boron.

[4]     A certified copy of the transcript of the 341 Meeting, which was held on June 9, 2016, is attached hereto as **Exhibit "A"**. References to that transcript will be in the form of "341 Tr. at ___."

[5]     "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint . . . . [O]n a motion to dismiss, we may take judicial notice of another court's opinion–not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Inc.*, 181 F.3d 410, 426-27 (3d Cir. 1999). The proceedings at the 341 Meeting constitute a public record – the record of such proceedings is available for free and upon request to any member of the public – and the court may judicially notice them through the certified transcript, as it may also take notice of the proceedings referred to herein of the Illinois Court.

9

there was detailed, I mean, very detailed . . . communications back and forth as far as what those amounts represented and when they were going to get paid out of DACA 1." (341 Tr. at 128:1-13.)    Michael McClure testified at the 341 Meeting that those communications exist today and reside on a computer used by Earl Fonville, the Debtors' former chief financial officer. (*Id.* at 128:3-4 (emphasis added).)

Indeed, consistent with the above testimony, on June 30, 2015, the date of the closing of the MGA Sale to Confie, AIH (as borrower) and JCF entered into a Consent and Waiver to Second Lien Credit Agreement (the "Consent and Waiver")[6] in order to allow certain assets subject to the MGA Sale to be sold free of JCF's asserted interests therein.    (Compl., ¶ 33.)    In light of JCF's claim to all of the proceeds of the sale to Confie, JCF had to agree to any use of the sale proceeds which would not be paid directly to it.    Absent JCF's consent to segregate certain of the sale proceeds for the benefit of the Debtors and their subsidiaries, including AIC, the sale to Confie could not close. Consistent with the allegations of the Counterclaim, and as confirmed by the testimony at the 341 Meeting, pursuant to Section 4.2 of the Consent and Waiver, JCF agreed that AIH would deposit proceeds of the sale, *i.e.*, JCF's alleged collateral, into two deposit accounts, in particular:

> [AIH] further covenants and agrees that, and understands that this Consent is conditioned upon, [AIH] only remitting such payments from the [DACA 1] Account as are agreed by the parties hereto and set forth on Schedule 3 to this Consent.    Within five days after the Closing Date, [AIH] will withdraw an amount equal to $8,572,000 from [the DACA 1 Account] and deposit such amount into a second deposit account ("Account #2") [*i.e.*, the DACA 2 Account] to be established by [AIH] . . . which Account shall be subject to a deposit account control agreement . . . pursuant to which neither [AIH] nor any of its Subsidiaries shall be permitted at any time to withdraw funds from [the DACA 2 Account]

---

[6]    A copy of the Consent and Waiver is attached to the Complaint as Exhibit E.

without the consent of [JCF] (not to be unreasonably withheld, delayed or conditioned).

(Compl., Ex. E (Consent and Waiver), §4.2 (bracketed text added).)  The $8,572,000 amount is the amount AIH's tax advisors, Dixon Hughes, calculated as the 2014 Tax Payment owed to AIC by AIH; that sum is included in the claim scheduled by AIH in favor of AIC as a non-contingent, undisputed, and liquidated debt.  (*See* Schedules of Assets and Liabilities of AIH, Case No. 12-12136 [D.I. 169], at 34, Item 3.)  These allegations were confirmed at the 341 Meeting.  (341 Tr. at 130:24 to 132:4.)  JCF admits that it agreed to segregate the amount in the DACA 2 Account, and admits that the Consent and Waiver refer to the segregated funds and their use.  (Compl., ¶ 36.)  In accordance with the terms of the Consent and Waiver, two days after closing the sale to Confie, on July 2, 2015, AIH withdrew an amount equal to the 2014 Tax Payment, *i.e.*, $8,572,000, from the DACA 1 Account and deposited it into the DACA 2 Account.  (Compl., ¶ 36.)  AIH's only connection to the DACA 2 Account was in setting up the account and depositing the funds.  Thus, to the extent AIH or its estate ever had any interest in the DACA 2 Funds, its interest was no more than bare legal title.

Schedule 3 to the Consent and Waiver sets forth the disbursements JCF agreed could be made from the DACA 1 and specifically describes the $8,572,000 as "AIC Tax Liability Not Scheduled."  (Compl., Ex. E, Schedule 3.)  It is evident that the exact amount estimated by Dixon Hughes to be the 2014 Tax Payment was segregated for the purpose of paying the tax liability owed to AIC.  JCF offers no other explanation for why those funds were segregated because there is none.

However, on September 1, 2015, two weeks *before* the due date of the Debtors' 2014 consolidated tax return, and at a time when *no default existed* under the Consent

11

and Waiver, or the JCF Credit Agreement, JCF sent a notice to UMB, purporting to transfer sole control and dominion over the funds in the DACA 2 Account to JCF, including the power to direct that all of such funds be transferred to JCF. (Compl., ¶ 38.) JCF thereby ensured that neither AIC nor AIH could make any request under the Consent and Waiver to use the funds in the DACA 2 Account. The funds in the DACA 2 Account continue to be held at UMB. (Compl., ¶ 47.)

**D.    The Illinois Court Complaint**

Prior to the filing of AIH's bankruptcy case, on October 13, 2015, the AIC Liquidator filed a complaint ("Illinois Court Complaint") in the Illinois Court against UMB and JCF (Compl., ¶ 43) seeking a determination that AIC was entitled to the funds in the DACA 2 Account. The Illinois Court Complaint was filed in the Illinois Court presiding over the rehabilitation proceeding in compliance with the provisions of the Agreed Order of Rehabilitation (superseded by the Liquidation Order) which requires all litigation involving assets of AIC to be brought in the liquidation proceedings. (*See* Liquidation Order (attached hereto as **Exhibit "B"**), ¶ E.iii, at 7-8 (entities with knowledge of the Liquidation Order "are enjoined and restrained from bringing or further prosecuting any claim, action or proceeding . . . whether in this State or elsewhere, against [AIC], or its property or assets, or the Director as its Liquidator, except insofar as those claims, actions or proceedings arise in or are brought in these liquidation proceedings")). The Illinois Court Complaint alleges: (1) breach of the Consent and Waiver by JCF's blocking disbursement of the funds in the DACA 2 Account, and thereby unreasonably withholding its consent to the use of those funds for their intended purpose, (2) intentional fraudulent transfer by delivering the notice to UMB with the intent to hinder, delay or defraud AIC and the AIC Liquidator in their ability to withdraw

12

the funds from the DACA 2 Account, and (3) fraud by representing that AIC would be paid the 2014 Tax Payment from the proceeds of the Confie sale. UMB was dismissed by agreement with the AIC Liquidator and with UMB's agreement to honor a court order with respect to the competing rights to the funds in the DACA 2 Account.[7]

Following the filing of the captioned cases on October 15, 2015, the Debtors notified the AIC Liquidator that the automatic stay precluded proceeding with the Illinois Court Complaint since the DACA 2 Account was held in the name of one of the debtors: AIH. The AIC Liquidator has not yet sought to modify the automatic stay so as to proceed with the Illinois Court Complaint.

### E.    The Chapter 11 Proceedings and the Adversary Complaint

On October 14, 2015, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. (Compl., ¶ 45.) On March 10, 2015, this Court entered an order converting each of the cases to one under chapter 7 of the Bankruptcy Code and appointing Don A. Beskrone as the trustee ("Trustee") for each estate.

Although the Illinois Court Complaint remains pending, on March 31, 2016, JCF filed the captioned Complaint against the AIC Liquidator, the Trustee and several of the Debtors, claiming rights to the funds in the DACA 1 Account and DACA 2 Account. (Compl., ¶ 37.) Specifically, the Complaint asserts the following Claims against the AIC Liquidator and/or the DACA 2 Account: (i) Second Claim for Relief - seeks declaratory judgment that JCF holds a validly perfected, first priority security interest in and lien on the funds in the DACA 2 Account; (ii) Fourth Claim for Relief - seeks relief from the

---

[7]    UMB is not named as a defendant in the captioned adversary proceeding, although JCF seeks an order requiring UMB to turn over the DACA 2 Funds.

automatic stay to enable JCF to enforce remedies with respect to, *inter alia*, the funds in the DACA 2 Account; (iii) Fifth Claim for Relief - seeks an order directing the Trustee and UMB to turn over the funds in the DACA 2 Account to JCF. On May 2, 2016, the AIC Liquidator answered the Complaint, and asserted counterclaims against JCF and crossclaims against AIH and the Trustee taking essentially the same position she had taken in the Illinois Court Complaint, and preserving her argument that this Court does not have, or should not exercise, jurisdiction over the Complaint. All other allegations and claims for relief in the Complaint address JCF's rights to money in a second DACA account, referred to as the DACA 1 Account and a judgment against, *inter alia*, James Hallberg referred to as the Hallberg Judgment, neither of which the AIC Liquidator claims an interest in. These allegations have been resolved by the settlement agreement as set forth below.

F.    **The Settlement Agreement**

On May 27, 2016, the Trustee filed a *Motion to Approve Settlement Agreement With JCF AFFM Debt Holdings L.P., New Affirmative LLC, Affirmative Investment LLC and J.C. Flowers & Co. LLC Pursuant to Bankruptcy Rule 9019* [D.I. 405] (the "Settlement Motion"), which was granted by this Court on July 11, 2016 [D.I. 439]. Among other things, the Settlement Agreement (attached to the Settlement Motion) provides (i) for JCF to release its claims to the DACA 1 Account and the Hallberg Judgment, with the funds and right to pursue the Hallberg Judgment to be released to the Trustee; and (ii) within five business days after this Court approves the settlement, *i.e.*, by no later than July 18, 2016 (the "Effective Date"), the "JCF Lender shall seek dismissal of the Trustee from the DACA 2 Adversary Proceeding with respect to the claims asserted by the JCF Lender against the Trustee in the DACA 2 Adversary Proceeding".

14

(Settlement Mot., Ex. A at 6.)  The Settlement Agreement further provides that "[u]pon the occurrence of the Effective Date, the Trustee and his successors and assigns shall be deemed automatically and without further action to have ***unconditionally and irrevocably waived and released (i) any interest in the funds held in DACA Account 2***" other than his contractual right under the Settlement Agreement to receive ***a payment from the JCF lender*** if it is successful in the DACA 2 Adversary Proceeding. (*Id.*(emphasis added).)

The Settlement Agreement also releases any security interests or liens JCF has in the DACA 1 Account and the Hallberg Judgment thereby rendering moot all claims in the Complaint other than those related to the DACA 2 Account.  Therefore, if this Court determines to dismiss or abstain from hearing the DACA 2 claims, it can and should dismiss the entire Complaint.

## STANDARD OF REVIEW

"A court *must* dismiss an action if it lacks subject matter jurisdiction." *In re The Fairchild Corp.*, 452 B.R. 525, 529 (Bankr. D. Del. 2011) (Sontchi, J.) (emphasis added). A movant can challenge subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) either on the face of the complaint or on the "factual existence of subject matter jurisdiction." *Id.* If the challenge is facial, the court accepts the allegation of the complaint as true. *Id.* On the other hand, "in challenges to the factual existence of subject matter jurisdiction, courts do not presume the truthfulness of a plaintiff's allegations and instead evaluate the merits of the jurisdictional claims." *Id.* at 529-30. Regardless, "whether the challenge is facial or factual, the plaintiff bears the burden of persuasion on each and every claim." *In re Am. Home Mortg. Holding*, 477 B.R. 517, 524 (Bankr. D. Del. 2012) (Sontchi, J.) (internal citations omitted).  Further, a claim should be dismissed where it "clearly

15

appears to be immaterial and made solely for the purpose of obtaining jurisdiction". *Id.* at 525 (internal citations omitted).

Here, the AIC Liquidator presents a factual challenge to subject matter jurisdiction. Specifically, the AIC Liquidator argues that based on the terms of the Consent and Waiver, the TAA and the Settlement Agreement, the issues presented in the Complaint regarding the DACA 2 Account are nothing more than a dispute between two creditors to funds in which none of the Debtors have an interest, and which will not affect the administration of the estates. Accordingly, the Court should not accept the allegations of the Complaint as true, but rather should look at the merits of the jurisdictional claims.

## ARGUMENT

### A.    The Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction

By statute, the federal district courts have jurisdiction over four types of bankruptcy matters: (1) "cases under title 11"; (2) proceedings "arising under title 11"; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. 28 U.S.C. § 1334(a)-(b). Section 1334 works in conjunction with 28 U.S.C. § 157, which defines matters arising under or arising in Title 11 as "core proceedings", while matters merely "related to" the bankruptcy are "non-core proceedings". 28 U.S.C. § 157; *In re Am. Home Mortg. Holding*, 477 B.R. 517, 525 (Bankr. D. Del. 2012).

"A case under title 11 is merely the bankruptcy petition itself." *In re Solyndra, LLC*, Adv. No. 15-50268, 2015 WL 6125246, *3 (Bankr. D. Del Oct. 16, 2015). "'Arising under' proceedings encompass actions based on any express provision of the Bankruptcy Code." *Id.* "Proceedings arising in a case under title 11 refer to proceedings

that are not based on any right expressly created by title 11, but nevertheless would have no existence outside the bankruptcy case." *Id.* Generally, core proceedings correlate with "arising in" and "arising under" jurisdiction. *See Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.),* 372 F.3d 154, 162 (3d Cir. 2004) ("Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings").

Proceedings "'related to' a case under title 11 constitute the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." *Id.* (internal citations omitted). Here, JCF cannot meet its burden to demonstrate that the Remaining Claims constitute "core" proceedings or that the Court has "related to" jurisdiction over the Claims. The Remaining Claims should, therefore, be dismissed pursuant to Rule 12(b)(1).

1.    **The Court lacks jurisdiction because the Claims are not "core" proceedings.**

"In order to evaluate whether a claim is 'core', a court must first look to the illustrative list of 'core' proceedings found in § 157(b)(2)." *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008). The Court then conducts a two-step test, "according to which a claim will be deemed core if (1) it invokes a substantive right provided by title 11 or (2) it is a proceeding, that by its nature, could arise *only in* the context of a bankruptcy case." *Id.* (internal citations omitted) (emphasis added). "It is important, however, that a court 'not simply [] apply the terms of the statute but rather [] analyze the nature of the underlying claim to determine whether, given constitutional constraints on bankruptcy jurisdiction …, that claim should be considered a core proceeding." *Id.* at 207 (quoting

17

*Meadowlands Commc'n, Inc. v. Banker's Trust Co.*, 79 B.R. 198, 199 (D.N.J. 1987)).

Here, JCF simply asserts, without support, that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) ("determinations of the validity, extent, or priority of liens"). (Compl., ¶ 6.)  JCF seeks a declaratory judgment that it has a security interest in the DACA 2 Funds, and that no entity **other than AIH and JCF** has an interest in the DACA 2 Funds.  (*See, generally*, Compl., ¶¶ 60-67.)  However, now that the Trustee has disclaimed any interest the estates might have otherwise had to the DACA 2 Funds, JCF cannot re-create jurisdiction out of a two-party dispute that does not involve assets of the estate.  First, the Second Claim does not invoke a substantive right under title 11; rather it seeks a declaratory judgment under 28 U.S.C. § 2201 as between two non-debtor entities. Second, the Second Claim is not such that it could *only* arise in the context of a bankruptcy case.  A determination of lien validity and priority is not an issue which may only arise in bankruptcy, but can be asserted in state court.  Moreover, the lien dispute regarding the DACA 2 Account is, in reality, nothing more than a contract dispute, namely whether the DACA 2 Funds belong to the AIC Liquidator or to JCF.  Contract disputes are state law issues which are generally considered non-core.  *See, e.g., Exide*, 544 F.3d at 207 (claims found to be non-core where each "is a state law cause of action, sounding in contract and tort.").  Accordingly, the Second Claim is not a core proceeding.

Similarly, neither the Fourth Claim nor the Fifth Claim are core proceedings.  In the Fourth Claim, JCF requests relief from the automatic stay so that it may enforce its purported remedies with respect to the DACA 2 Funds.  (Compl., ¶¶ 73-74.)  In the Fifth Claim, JCF requests an order directing the Trustee and UMB to turn over the DACA 2 Funds.  (*Id.* at ¶¶ 75-77.)  Both of these claims are ancillary to the Second Claim, which,

as discussed above, is not a core proceeding, and these ancillary claims cannot transform the Second Claim into a core proceeding. In fact, the Fourth Claim is improper as a request for relief from the automatic stay must be brought by motion. *See* Fed. R. Bankr. P. 4001 and 9014. But more relevant, the Trustee has waived any right to the funds in the DACA 2 Account and, therefore, no relief from stay or turnover is warranted or required. (*See, generally, Limited Objection of AIC Liquidator to Motion of Don A. Beskrone, Chapter 7 Trustee, to Compel UMB Bank, N.A. to Immediately Turn Over to the Trustee Funds and Accounts Held in the Name of the Debtors* [D.I. 432].)

As the Claims are non-core, this Court could assert subject matter jurisdiction only if it has "related to" jurisdiction over the claims, and, as explained below, it does not.

### 2.    The Court does not have "related to" jurisdiction over the Claims.

An action is "related to" a bankruptcy proceeding if "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Am. Home Mortg. Holding*, 477 B.R. 517, 528 (Bankr. D. Del. 2012) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Explained further, an "'action is related to bankruptcy if the outcome [1] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ... [2] in any way impacts upon the handling and administration of the bankruptcy estate.'" *Id.* (quoting *Pacor*, 743 F.2d at 994). However, "the *Pacor* test requires the conceivability of a *direct* impact upon the estate." *Id.* at 529 (citing *In re W.R. Grace & Co.*, 591 F.3d 164, 175 (3d Cir. 2009)).

JCF asserts that the "Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334(b)." (Compl., ¶ 7.) It offers no support or explanation. To the contrary, now that

19

JCF has consummated the settlement with the Trustee, neither AIH nor any other Debtor has any interest in the DACA 2 Account.  AIH never had more than bare legal title to the funds in the DACA 2 Account, and whatever interest AIH may have had, has been released by the Trustee, who has "unconditionally and irrevocably [waived] and [released]", … "any interest in the funds held in the DACA Account 2".  (Settlement Mot., Ex. A at 6.)  On July 11, 2016, the Court entered an order [D.I. 439] approving the Settlement Agreement.  Although the Settlement Agreement contemplates the possibility that JCF may win its dispute with the AIC Liquidator and, if so, that JCF would pay certain funds to the Trustee, that can only occur in the event there is a "resolution of the litigation [between Liquidator and JCF] regarding entitlement to the funds in the DACA Account 2".  (*Id.* at 4.)  The Trustee's contingent right to receive additional funds from JCF under the JCF settlement is nothing more than a contingent contract claim against JCF - not a claim to the funds in the DACA 2 Account, which he has waived.  The Settlement Agreement does not change the fact that the DACA 2 Funds will go to either the Liquidator or JCF but not to the estate.

Further, both the AIC Liquidator and JCF have filed proofs of claim asserting competing claims to the funds in the DACA 2 Account, and duplicative "deficiency" (*i.e.*, unsecured) claims to the extent they are not successful in the litigation.  (*See Claims Register*, D.I. 340, Proof of Claim No. 47 filed by AIC by and through the AIC Liquidator and Proof of Claim No. 48 filed by JCF; copies of both proofs of claim are attached hereto without their accompanying exhibits as **Exhibit "C."**)  The amount of claims asserted against the estate will remain exactly the same regardless of the outcome of this litigation.  The prevailing party will receive the DACA 2 Funds and reduce its

20

unsecured claim by a corresponding amount; the losing party's unsecured claim will continue to include the amount of the DACA 2 Funds. Thus, the only "impact" on the estate is the identity of the claimant with an unsecured claim against the Debtors for an amount equal to the DACA 2 Funds. The fact that resolution of the adversary action would result in either JCF or the AIC Liquidator withdrawing a portion of its unsecured claim is not a "direct impact" on the estate as contemplated by the Third Circuit but is merely an incidental effect of the litigation, and, without more, cannot confer jurisdiction. *See Adams v. Prudential Sec., Inc. (In re Found. for New Era Philanthropy)*, 201 B.R. 382, 395-97 (Bankr. E.D. Pa. 1996) (the outcome of litigation which would leave unaltered the amount and priority of claims against the estate but would change the identity of the creditor does not affect the bankruptcy case so that the litigation is 'related' to it); *Royal Bank v. Selig (In re Selig)*, 135 B.R. 241, 245-46 (Bankr. E.D. Pa. 1992) ("...the only conceivable effect which we can perceive that the resolution of the ...[litigation] could have upon the Debtors or their estate is the substitution of one of its creditors for another. Such a slight effect upon the Debtor's estate has been held to have no effect on the debtor's rights and liabilities and to be insufficient to allow invocation of 'related to' jurisdiction...")

Under these circumstances, the Court does not have "related to" jurisdiction over the Remaining Claims. *See, e.g., In re DVI, Inc.*, 324 B.R. 548, 553 (Bankr. D. Del. 2005) (no "related to" jurisdiction where claims involved "non-core state-law matters relating to non-debtor third parties and property that is not part of the Debtors' estate").

**B.    The Court Should Abstain from Hearing the Remaining Claims Pursuant to 11 U.S.C. § 1334(c)(1)**

Even if this Court finds that it has subject matter jurisdiction over the Remaining Claims, the AIC Liquidator requests that the Court abstain from exercising jurisdiction pursuant to 28 U.S.C. § 1334(c)(1), which authorizes it, "in the interest of justice, or in the interest of comity with state courts or respect for State law, [to] abstain[ ] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

The following factors inform a court's determination as to whether discretionary abstention is appropriate:

(1)    the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

(2)    the extent to which state law issues predominate over bankruptcy issues;

(3)    the difficulty or unsettled nature of the applicable state law;

(4)    the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5)    the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6)    the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)    the substance rather than form of an asserted "core" proceeding;

(8)    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)    the burden on the bankruptcy court's docket;

(10)    the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)    the existence of a right to a jury trial; and

(12)    the presence in the proceeding of non-debtor parties.

*In re RNI Wind Down Corp.,* 348 B.R. 286, 295–96 (Bankr. D. Del. 2006); *aff'd*, 359 F. App'x 352 (3d Cir. 2010); *see also Broadhollow Funding, LLC v. Bank of Am., N.A. (In re Am. Home Mortg. Holdings, Inc.)*, 390 B.R. 120, 138 (Bankr. D. Del. 2008). "Evaluating the twelve factors is not a mathematical formula." *RNI Wind Down*, 348 B.R. at 296 (internal citations omitted). However, courts generally attribute more weight to: (a) the effect on the administration of the estate, (b) whether the claim involves only state law issues, and (c) whether the proceeding is core or non-core. *See DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 220, 224 (Bankr. D. Del. 2010).

Factors nine and eleven are inapplicable as there is no indication that this Court's docket is burdened and there is no request for a jury trial. All of the other factors weigh in favor of abstention.

With respect to the first factor, *i.e.*, the effect or lack thereof on the efficient administration of the estate, as discussed above, abstaining from hearing the Remaining Claims will have *no* effect on the administration of the Debtors' estates. Pursuant to the Settlement Agreement, the Trustee has released any interest the Debtors' may have had in the DACA 2 Account. Further, the fact that the duplicative unsecured claims filed by the AIC Liquidator and JCF will be resolved by this litigation is insufficient to confer jurisdiction upon this Court.

The second factor strongly favors abstention as state law issues predominate, namely interpreting the Tax Allocation Agreement, the Consent and Waiver and the JCF Credit Agreement, and addressing the state law breach of contract and fraud claims in the

Counterclaim, to determine proper ownership of the funds in the DACA 2 Account. Determining ownership in property is a state law issue. *See Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 756, 757 (S.D.N.Y. 1994) (action to "determine disputed *ownership* in property . . . arises under state law [citation omitted], and is independent and outside the reach of the bankruptcy process [citation omitted]") (emphasis in original).

Regarding the third factor, as this Court has noted, even if a matter does not involve unsettled state law issues, this factor weighs in favor of abstention because the state law issues predominate the proceeding. *Broadhollow Funding*, 390 B.R. at 138 ("even if a matter does not involve unsettled issues of state law, where the state law issues so predominate the proceeding…this factor weighs in favor of having the state court decide it") (internal quotations omitted).

The fourth factor is clearly met as the Illinois Court Complaint was brought pre-petition and is still pending. What JCF is really seeking is a determination that it can receive distribution of the funds in the DACA 2 Account without violating the Liquidation Order. That request is more properly made to the Illinois Court.

The fifth factor, *i.e.*, the jurisdictional basis, if any, other than 28 U.S.C. § 1334, is neutral as there may be diversity jurisdiction for the Complaint based on JCF's equity structure.

The sixth factor weighs in favor of abstention as the Remaining Claims are wholly unrelated to the Debtors' bankruptcy cases, particularly in light of the Trustee's release of all of the Debtors' interests in the DACA 2 Account, and the fact that one of

654031.1 07/22/2016

the duplicative deficiency claims will be dropped is not a direct impact on the estates sufficient to create jurisdiction where it otherwise does not exist.

The seventh and eighth factors clearly favor abstention because, as described in detail above, the Remaining Claims are not core proceedings and there are only state law claims at issue. All other claims in the Complaint, *i.e.*, the allegations regarding the DACA 1 Account and the Hallberg Judgment, are now moot due to JCF's release of its lien in those assets pursuant to the Settlement Agreement. Thus, it is possible for the Court to abstain and allow a state court to decide the remaining issues.

Regarding the tenth factor, it appears that JCF is forum shopping. JCF could have pursued, and still can pursue, the Remaining Claims as counterclaims to the Illinois Court Complaint, as that case was pending when the captioned Complaint was filed. However, JCF chose to file the captioned Complaint in the bankruptcy case because it likely believes this Court will be the more favorable forum to grant the requested relief.

Finally, the twelfth factor, the presence of non-debtors in the proceeding, weighs in favor of abstention. Although the Debtors are listed as defendants, any interest they had in the DACA 2 Funds has been released by the Trustee. This fact, combined with JCF's release of its liens in the property at issue in the other claims (*i.e.*, the DACA 1 Account and the Hallberg Judgment), requires that the Debtors be dismissed as defendants. In substance, the Court should no longer consider them parties to the Complaint. Accordingly, there are only non-debtors involved in the proceeding.

With the exception of the fifth factor, all of the relevant factors favor abstention. This provides an overwhelming basis for the Court to exercise its discretion and abstain from hearing this case in favor of the Illinois Court.

654031.1 07/22/2016

C.    **The Court Should Abstain Under *Burford v. Sun Oil Co.***

Alternatively, the AIC Liquidator requests that this Court apply *Burford* abstention and allow the Illinois Court to adjudicate issues concerning the ownership of the DACA 2 Funds. In *Burford v Sun Oil Co.,* 319 U.S. 315 (1943), the Supreme Court held that federal courts should abstain from interfering with state regulatory schemes. *See also, e.g., Feige v. Sechrest,* 90 F.3d 846, 847, 849 (3d Cir. 1996) (in light of statutory insurer liquidation proceeding in Pennsylvania Commonwealth court, district court stayed action where plaintiff sought to rescind asset transfer made to insolvent insurer's estate because it would "affect directly and adversely what the Liquidator is attempting to achieve through her proceedings: the protection of the policyholders"); *Wagner v. Amwest Ins. Grp., Inc., (In re Amwest Ins. Grp., Inc.),* 285 B.R. 447, 456 (Bankr. C.D. Cal. 2002) (applying voluntary abstention to allow state liquidation court to interpret tax allocation agreement where it was "clear that the interpretation of the Tax Allocation Agreement is based on state law.").

*Burford* abstention is particularly appropriate with respect to state court insurance rehabilitation and liquidation proceedings, Congress having recognized that regulation of the insurance industry is a matter best left to the States. *See, e.g., Grode v. Mut. Fire, Marine & Inland Ins. Co.,* 8 F.3d 953, 959 (3d Cir. 1993) (*Burford* is concerned with protecting complex state administrative processes from undue federal interferences; "complex regulations relating to insolvent insurance companies have to do with plans of rehabilitation and payment to policy holders"). As this matter concerns AIC's right to the 2014 Tax Payment, it directly affects the AIC's Liquidator's ability to maximize the value of the assets of AIC to pay the claims of its policyholders. These are exactly the functions that the Illinois Code was enacted to regulate and protect. *Lincoln Towers Inc.*

26

*Agency, Inc. v. Boozell*, 684 N.E.2d 900, 904 (1997). Accordingly, *Burford* abstention is warranted.

**D.    Prudence Dictates That This Court Refrain from Exercising Jurisdiction over Matters Governed by Illinois Law and Which Are Pending in the Illinois Court**

Abstention is also appropriate in cases such as this, where suit was brought in federal court *after* state proceedings concerning the same property had been commenced and are still pending. *See Levy v. Lewis,* 635 F.2d 960, 965 (2d Cir. 1980) ("courts first assuming jurisdiction over property may exercise their jurisdiction in proceedings to dispose of the property to the exclusion of other courts"); *Kenner Acquisitions, LLC v. BellSouth Telecomm., Inc.,* No. 06-3927, 2007 WL 625833, at *3 (E.D. La. Feb. 26, 2007) ("[t]he preexisting exercise of jurisdiction over a piece of property by the state court clearly favors abstention in a subsequent federal proceeding involving the same property. In this case, it is undisputed that the state case involving the property in question predates the present federal case.").

This rule was embraced by the Supreme Court in *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939), where the court stated:

> that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other . . . applies . . . where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature, where, to give effect to its jurisdiction, the court must control the property.

This rule, while "often stated as a matter of jurisdiction: that a second court cannot have jurisdiction to proceed *in rem* if jurisdiction over the *res* is maintained in another court," is equally a doctrine of prudence, counseling a second court to defer to

27

the first "for the sake of comprehensive disposition of rights" in property. *Levy*, 635 F.2d at 965-66.

Courts in the Third Circuit apply this doctrine as a "mechanical rule" mandating that "the court in which the second suit is brought yield its jurisdiction" when "(1) the litigation in both the first and second fora are *in rem* or *quasi in rem* in nature; and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court." *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993). Courts in this circuit continue to embrace the rule to avoid dual jurisdiction over assets already involved in injunctive and receivership actions. *See, e.g., Asbestos Workers Local 14 v. Hargrove*, No. Civ. A. 93-078, 1993 WL 183990, at * 5 (E.D. Pa. May 25, 1993) (dismissing federal action for lack of jurisdiction where a state court receivership proceeding has been commenced first); *In re Philippi*, No. 06-91, 2006 WL 1949020, at *3 (D.N.J. July 11, 2006) (a proceeding enjoining a party from transferring or disposing of property creates *in rem* rights such that a second court cannot obtain jurisdiction over the property subject to the first court's injunction).

As set forth in the Liquidation Order, prior to Debtor's chapter 11 filing, the Illinois Court had taken jurisdiction over AIC's assets, including AIC's rights arising as a member of the Consolidated Tax Group and under the TAA. The Liquidation Order also requires the Illinois Court to hear this action. In furtherance of the Liquidation Order, the AIC Liquidator has been marshaling and liquidating AIC's assets; consequently, abstention as a matter of prudence is warranted.

## CONCLUSION

For the reasons stated herein, the AIC Liquidator asks the Court to enter an order (a) dismissing the Remaining Claims of the Complaint or, in the alternative (b) abstaining from exercising jurisdiction over the Complaint, and (c) granting such other and further relief as the Court deems appropriate.

Dated: July 22, 2016

SAUL EWING LLP

Mark Minuti (DE Bar No. 2659)
Teresa K.D. Currier (DE Bar No. 3080)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6840
Facsimile: (302) 421-5873

- and -

Faye B. Feinstein
Christopher Combest
Lauren Beslow
**QUARLES & BRADY LLP**
300 North LaSalle Street, Suite 4000
Chicago, Illinois 60654
Telephone: (312) 715-5000
Facsimile: (312) 715-5155

*Counsel to Anne Melissa Dowling, Acting Director of Insurance of the State of Illinois, in her capacity as statutory and Court-affirmed Liquidator of Affirmative Insurance Company*

654031.1 07/22/2016