# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| AFFIRMATIVE INSURANCE | : | Case No. 15-12136 (CSS) |
| HOLDINGS, INC., et al., | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| _____ | : | |
| JCF AFFM Debt Holdings. L.P. | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Adv. Proc. Case No. 16-50425 (CSS) |
| | : | |
| AFFIRMATIVE INSURANCE | : | |
| HOLDINGS, INC., AFFIRMATIVE | : | |
| MANAGEMENT SERVICES, INC., | : | |
| AFFIRMATIVE SERVICES, INC., | : | |
| AFFIRMATIVE UNDERWRITING | : | |
| SERVICES, INC., AFFIRMATIVE | : | |
| INSURANCE SERVICES, INC., | : | |
| AFFIRMATIVE GENERAL AGENCY, | : | |
| INC., AFFIRMATIVE INSURANCE | : | |
| GROUP, INC. | : | |
| AFFIRMATIVE L.L.C., ANNE MELISSA | : | |
| DOWLING, ACTING DIRECTOR OF | : | |
| INSURANCE OF THE STATE OF | : | |
| ILLINOIS, solely as Liquidator of | : | |
| AFFIRMATIVE INSURANCE | : | |
| COMPANY, and DON A BESKRONE, | : | |
| Solely as TRUSTEE, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| ANNE MELISSA DOWLING, ACTING | : | |
| DIRECTOR OF INSURANCE OF THE | : | |
| STATE OF ILLINOIS, solely as | : | |
| Liquidator of AFFIRMATIVE | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Counterplaintiff, | : | |
| | : | |
| v. | : | |

|                                                    |   |
| -------------------------------------------------- | - |
|                                                    | : |
| JCF AFFM DEBT HOLDINGS L.P.                         | : |
|                                                    | : |
| Counterdefendant.                                  | : |
|                                                    | : |
| ANNE MELISSA DOWLING, ACTING                       | : |
| DIRECTOR OF INSURANCE OF THE                       | : |
| STATE OF ILLINOIS, solely as                       | : |
| Liquidator of AFFIRMATIVE                          | : |
| INSURANCE COMPANY,                                 | : |
|                                                    | : |
| Crossplaintiff,                                    | : |
|                                                    | : |
| v.                                                 | : |
|                                                    | : |
| AFFIRMATIVE INSURANCE                              | : |
| HOLDINGS, INC., and DON A.                         | : |
| BESKRONE, solely as TRUSTEE,                       | : |
|                                                    | : |
| Crossdefendants.                                   | : |

## OPINION[1]

| **SAUL EWING LLP** | **BAKER & MCKENZIE LLP** |
| --- | --- |
| Mark Minuti | Debra A Dandeneau |
| 1201 North Market Street | Jacob M. Kaplan |
| Suite 2300 | 452 Fifth Avenue |
| Wilmington, DE  19899 | New York, NY  10018 |
| -and- | -and- |
| **QUARLES & BRADY LLP** | **RICHARD, LAYTON & FINGER, P.A.** |
| Faye B. Feinstein | Paul N. Heath |
| Christopher Combest | Zachary I. Shapiro |
| Lauren Beslow | Andrew M. Dean |

---

[1]  "The court is not required to state findings or conclusions when ruling on a motion under Rule 12…" Fed. R. Bankr. P. 7052(a)(3).  Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

300 North LaSalle Street, Suite 4000        920 North King Street
Chicago, IL  60654                          Wilmington, DE  19801

Counsel to Anne Melissa Dowling,           Counsel for Plaintiff
Acting Director of Insurance of the        JCF AFFM Holdings, L.P.
State of Illinois, in her capacity as
Statutory and Court-affirmed
Liquidator of Affirmative Insurance
Company


Dated: March 29, 2017

Sontchi, J. _____

## INTRODUCTION

Before the Court are two related motions to dismiss the remaining claims and

counterclaims in this adversary proceeding.   Ultimately, beyond the comprehensive

arguments, this matter is simple.  The parties put forward antithetic theses to justify their

priority entitlement to the funds in the bank account at issue here.  Those funds are a

portion of the proceeds from the sale of the Debtors' managing general agencies.  On the

one hand, Anna Melissa Dowling (the "AIC Liquidator"), the court-appointed liquidator

of Affirmative Insurance Company ("AIC"), a non-debtor subsidiary of Affirmative

Insurance Holdings, Inc. ("AIH"), asks the Court to impose a constructive trust or

resulting trust, for the benefit of AIC, over all funds held in the bank account.

Additionally, the AIC Liquidator argues that the outcome of this dispute will have no

effect on the administration of the Debtors' estates and contends that it should instead be

heard by an Illinois state court as part of AIC's ongoing rehabilitation proceeding.  On

the other hand, JCF AFFM Debt Holdings, L.P. ("JCF"), a major lender to AIH, seeks a

judgment of this Court declaring, *inter alia*, that it has a validly perfected security interest in and a lien on the deposit account. For the reasons set forth below, the Court concludes that resolving this matter requires, first and foremost, to determine whether the funds in the bank account in dispute are property of the estate or not. Such a decision reflects a traditional function of the bankruptcy court in which the debtor case is pending. Thus, the Court finds that it has jurisdiction over this matter and that permissive abstention is not appropriate. Furthermore, the Court concludes that each count in the counterclaims also goes to whether the funds held in the DACA 2 Account are property of the estate. As such, it is apparent that there is a dispute of a material fact between the parties. Since the Court finds that the counterclaims contain specific factual allegations, taken they are true, to suggest that the AIC Liquidator is entitled to the funds, the Court holds that dismissal is not appropriate at this time.

## JURISDICTION AND VENUE

The question of the Court's jurisdiction over this adversary proceeding is central to this motion. A bankruptcy court has authority to determine whether it has subject matter jurisdiction over an adversary proceeding filed in a case before the court.[2] The motion to dismiss for lack of subject matter jurisdiction is filed under Federal Rule of Civil Procedure 12(b), which applies to adversary proceedings pursuant to Federal Rule

---

[2] *See, e.g., Casino Caribbean, LLC v. Money Centers of America (In re Money Centers of America)*, No. 14-50437, 2017 WL 775780, at *1 (Bankr. D. Del. Feb. 28, 2017); *Liquidating Tr. Of the MPC Liquidating Trust v. Granite Fin. Solutions (In re MPC Computers, LLC)*, 465, B.R. 384, 386 (Bankr. D. Del. 2012); *The Fairchild Liquidating Trust v. State of New York (In re The Fairchild Corp.)*, 452 B.R. 525, 528 (Bankr. D. Del. 2011) (citations omitted). *See also Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940) (explaining that a federal court has authority to determine whether it has jurisdiction over a dispute)).

of Bankruptcy Procedure 7012(b).  Accordingly, this Court may determine whether to

dismiss JCF's complaint for lack of subject matter jurisdiction.  If this Court does have

jurisdiction, venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

### STATEMENT OF FACTS

#### A.    Factual Background Related to the Adversary Proceeding

Founded in 1998, AIH together with each of its wholly-owned direct and indirect

subsidiaries provided non-standard personal automobile insurance ("NSPAI") policies

for individual consumers in targeted geographic markets.[3]  NSPAI policies provide

coverage to drivers who find it difficult to obtain insurance from standard automobile

insurance companies due to their lack of prior insurance, age, driving record, limited

financial resources, or other factors.[4]  AIH's policies were written by its state-regulated

insurance subsidiaries, including AIC, which are not Debtors in these Chapter 7 cases.[5]

Since 2004, AIH and certain of its subsidiaries, including AIC, have agreed to file

consolidated federal income tax returns, as memorialized in a Consolidated Tax

Allocation Agreement (the "Tax Allocation Agreement").[6]  As parent of the companies in

the affiliated group, AIH would file consolidated income tax returns and either pay the

---

[3]  *See* Decl. of Michael J. McClure in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings, Del. Bankr. No. 15-12136 (CSS), ¶ 6, D.I. 2.

[4]  *Id.* at ¶ 9.

[5]  *Id.* at ¶ 7.  Prior to the filing of the Debtors' cases, the non-debtors regulated subsidiaries were placed into rehabilitation proceedings by the various domiciliary states exercising regulatory authority over them.

[6]  Complaint for Declaratory Judgment Pursuant to Sections 506(a) and 541(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 7001(2) Determining the Extent, Validity, and Priority of Lien and for Entry of an Order Granting Relief From the Automatic Stay and Directing Turnover of Collateral Pursuant to Section 362(d) of the Bankruptcy Code (the "Compl."), Ex. L, Ex. A thereto, Adv. Proc. D.I. 1.

entire income tax liability of the affiliated group or receive any refunds due to the affiliated group.  Under the Tax Allocation Agreement, for each tax year in which a subsidiary's net operating losses, net capital losses, foreign tax credits, investments credit, or other deductible or creditable items, were used to offset the income of the affiliated group, the subsidiary was entitled to "cash or securities having a market value equal to the actual tax savings realized by the Consolidated Group. . . ."[7]

For the affiliated group's tax year ending December 21, 2014, the 2014 return reported an overall net operating loss of $45,172,492, of which $44,436,645 was allocated to AIC.  Presumably, AIC was entitled to a related payment pursuant to the Tax Allocation Agreement, which it has not yet received (the "2014 Tax Payment").  The AIC Liquidator believes that the amount of the 2014 Tax Payment owed to AIC is not more than $8,572,000.  AIC Liquidator has alleged that the funds earmarked for the 2014 Tax Payment were deposited to, and remain in, a designated bank account.  The 2014 Tax Payment was identified by AIH as an unsecured claim in favor of AIC.[8]

On September 30, 2013, AIH entered into a credit agreement with JCF as lender (the "JCF Credit Agreement") pursuant to which JCF made a loan to AIH (the "JCF Loan").[9]  JCF alleges that in connection with the JCF Loan, the Debtors granted JCF a

---

[7] *Id.* at §§ 2, 4.  It seems that the Tax Allocation Agreement is governed by Texas law, *see id.* § 14.

[8] *See* Schedules of Assets and Liabilities of AIH, at p. 34, Del. Bankr. No. 15-12136, D.I. 169.  It is worth noting that the AIC Liquidator states that the AIC's claim is included in the Schedules of Assets and Liabilities as a non-contingent, undisputed, and liquidated claim, *see* Brief in Support of Motion of the AIC Liquidator to Dismiss Adversary Proceeding For Lack of Subject Matter Jurisdiction, or for Abstention (the "Br. in Support of Mot. to Dismiss"), pp. 8, 11, Adv. Proc. D.I. 28.  However, the Schedules of Assets and Liabilities indicates that, as of the petition date, AIC's claim is contingent.

[9] Compl., Ex. B.

security interest in personal property belonging to AIH and other related entities, including all deposits account.[10]

On June 12, 2015, AIH and certain of its subsidiaries entered into an agreement (the "Purchase Agreement") under which the Debtors sold their owned managing general agencies ("MGAs") to Confine Seguros Holding II Co. (respectively, "Confine" and the "MGA Sale").[11]   But, while the network of MGAs could sell insurance policies, they were not themselves certified by any state to conduct the business of insurance.[12] For our purposes, the MGAs needed AIC to write the policies that the MGAs sold. Therefore, Confine needed AIC to remain an operating insurer in compliance with Illinois law.

As alleged by the AIC Liquidator, it seems that before the MGA Sale, the Director of the Illinois Department of Insurance conveyed the Department's concern that the proceeds of the sale would be used solely to pay off debt holders, including JCF, leaving nothing to satisfy accrued operational expenses, including the 2014 Tax Payment.[13] Furthermore, the AIC Liquidator contends that in order to satisfy the concerns of the Illinois Department of Insurance, the Debtors agreed to use a portion from the proceeds of the MGA Sale to, *inter alia*, set aside funds to make the 2014 Tax Payment to AIC.[14]

---

[10]  *Id.*, ¶¶ 28-29.

[11]  *Id.*, ¶¶ 31.

[12]  *See* Decl. of Michael J. McClure in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings, Del. Bankr. No. 15-12136, ¶¶ 7-8, D.I. 2.

[13]  *See* Br. in Support of Mot. to Dismiss, p. 9.

[14]  *Id.*

On June 30, 2015, the date of the closing of the MGA Sale to Confine, AIH and JCF entered into a Consent and Waiver to Second Lien Credit Agreement (the "Consent and Waiver") in order to allow certain assets subject to the MGA Sale to be sold free of JCF's asserted interests therein.[15]   In light of JCF's claim to all of the proceeds of the sale to Confine, JCF had to agree to any use of the MGA Sale proceeds which would not be paid directly to it.  As part of this consensual arrangement, on June 30, 2015: (1) Confine wired directly to JCF $3,137,000 of the MGA Sale proceeds, which funds were applied by JCF to pay down the JCF Loan; (2) Confine wired to AIH $10,588,388.61 of the MGA Sale proceeds, which AIH deposited in a bank account at UMB Bank N.A. (respectively, "UMB" and "DACA 1 Account").[16]   In accordance with the terms of the Consent and Waiver, two days after closing the MGA Sale, on July 2, 2015, AIH withdrew an amount of $8,572,000 from the DACA 1 Account and deposited it into another UMB deposit account created by AIH (the "DACA 2 Account").[17]   This is the account at the heart of this adversary proceeding.

On September 1, 2015, before the due date of the Debtors' 2014 consolidated tax return,[18] JCF sent a written notice to UMB, purporting to transfer sole control and

---

[15]  Compl., at ¶ 33.

[16]  *Id.* at ¶¶ 34-35.

[17]  *Id.* at ¶ 36.

[18]  Br. in Support of Mot. to Dismiss, p. 11; JCF's Memorandum of Law in Opposition to AIC Liquidator's Motion to the Dismiss Adversary Proceeding for Lack of Subject Matter Jurisdiction, or for Abstention, p. 9, Adv. Proc. D.I. 38.

dominion over the funds in the DACA 2 Account.[19]  To this day, the funds in the DACA 2 Account continue to be held at UMB.[20]

## B.    The Illinois Court Rehabilitation Proceeding

On September 16, 2015, the AIC Liquidator, in her capacity as the Acting Director of Insurance of the State of Illinois, filed with the Circuit Court of Cook County, Illinois (the "Illinois Court"), a verified complaint for rehabilitation seeking entry of an agreed order of rehabilitation against AIC.[21]  In response, also on September 16, 2015, the Illinois Court entered an agreed order of rehabilitation against AIC that, among other things, affirmed the AIC Liquidator as rehabilitator for AIC.[22]  On March 24, 2016, the Illinois Court entered its order of liquidation with a finding of insolvency against AIC.[23]  The Illinois Court's liquidation order gave the AIC Liquidator possession and control over AIC's assets, including all of AIC's causes of action.[24]

## C.    The Illinois Court Complaint

On October 9, 2015, the Illinois Office of the Special Deputy Receiver, representing the AIC Liquidator, sent a letter to UMB demanding that UMB wire $8,572,000 from the DACA 2 Account to AIC as payment for the money that AIH allegedly owes to AIC in

---

[19] Compl., ¶ 38.

[20] *Id.* at ¶ 47.

[21] *Id.*, ¶¶ 21-22; Br. in Support of Mot. to Dismiss, p. 6.

[22] Compl., ¶ 39.

[23] *Id.* at ¶¶ 20, 50; Br. in Support of Mot. to Dismiss, p. 7.

[24] Compl., ¶ 39; Br. in Support of Mot. to Dismiss, p. 7.

connection with the 2014 Tax Payment.[25]  Subsequently, on October 13, 2015, the AIC

Liquidator filed a complaint in the Illinois Court against UMB and JCF seeking a

determination that AIC was entitled to the funds in the DACA 2 Account.[26]

**D.    Procedural Background of the Debtors' Bankruptcy Cases and the Adversary Proceeding**

On October 14, 2015, each of the Debtors filed a voluntarily petition for relief under

Chapter 11 of the Bankruptcy Code with this Court.[27]  On March 10, 2015, this Court

entered an order converting these cases to one under Chapter 7 of the Bankruptcy Code

and appointing Don A. Beskrone as the Trustee (the "Trustee").[28]

On March 31, 2016, JCF filed the captioned Complaint against the Trustee, several

of the Debtors, and the AIC Liquidator, claiming rights to the funds in the DACA 1

Account and DACA 2 Account (the "Complaint").[29]  Specifically, the Complaint seeks,

among other things, declaratory judgment that JCF holds a validly perfected security

interest in and a lien on the funds in the DACA 2 Account; relief from the automatic stay

to enable JCF to enforce remedies with respect to the DACA 2 Account; and, an order

from the court directing the Trustee and UMB to turn over the funds in the DACA 2

Account to JCF.[30]  On May 2, 2016, the AIC Liquidator answered the Complaint, and

---

[25] Compl., ¶ 42 and Ex. K.

[26] *Id.* at ¶ 43.  JCF asserts that it has never been served with the complaint in the Illinois Court.

[27] Del. Bankr. No. 15-12136, D.I. 1.

[28] *Id.* D.I. 337, 338.

[29] The Complaint also sought a declaratory judgment that JCF has a validly perfected security interest in and a lien on another asset on the Debtors' named the Hallberg Judgment, *see* Compl., ¶ 4.

[30] Compl., ¶¶ 3, 5.

asserted counterclaims against JCF (the "Counterclaims") and crossclaims against AIH and the Trustee, [31] taking essentially the same position the AIC Liquidator had taken in the complaint in the Illinois Court, and preserving the argument that this Court does not have, or should not exercise, jurisdiction over the Complaint.

Towards the end on May 2016, JCF and the Trustee were able to resolve their dispute and to seek this Court approval of a settlement agreement pursuant to Bankruptcy Rule 9019 (the "Settlement Agreement").[32]  On July 11, 2016, this Court approved the Settlement Agreement.[33]  Among other things, the Settlement Agreement provides for JCF to release all its claims with regard to the DACA 1 Account, and that ". . . the JCF Lender shall seek dismissal of the Trustee from the DACA 2 Adversary Proceeding with respect to claims asserted by the JCF Lender against the Trustee in the DACA 2 Adversary Proceeding."[34]  The Settlement Agreement further provides that ". . . the Trustee and his successors and assigns shall be deemed automatically and without further action to have unconditionally and irrevocably waived and released (i) any interest in the funds held in the DACA 2 Account," other than the right to receive an additional payment from JCF if the latter is successful in the litigation regarding the entitlement to the funds in the DACA 2 Account.[35]  Subsequently, on August 2, 2016, JCF

---

[31]  The AIC Liquidator's Answer and Affirmative Defenses to Complaint, Counterclaim and Crossclaim (the "AIC Liquidator's Answer and Counterclaim"), Adv. Proc. D.I. 4.

[32]  *See* the Trustee's Motion to Approve the Settlement Agreement, Del. Bankr. No. 15-12136, D.I. 405 (the "Settlement Motion") (the Settlement Agreement was attached as Ex. A).

[33]  Del. Bankr. No. 15-12136, D.I. 439.

[34]  The Settlement Motion, Ex. A at ¶ 4.

[35]  *Id.* at ¶¶ 2, 5.

dismissed its claims in the Complaint against the Debtors and the Trustee.[36]  The AIC

Liquidator, not a party to the Settlement Agreement, followed suit on August 9, 2016,

dismissing her crossclaims against AIH and the Trustee.[37]  The remaining Counterclaims

against JCF include three counts for breach of contract, intentional fraudulent transfer,

and fraud.

### E.    Motion to Dismiss for Lack of Subject Matter Jurisdiction - Parties' Arguments

#### i.    AIC Liquidator

The AIC Liquidator's premise is that the DACA 2 Account was created for the

purpose of ensuring that the 2014 Tax Payment to AIC under the Tax Allocation

Agreement could be made.  Therefore, the AIC Liquidator seeks a declaration that a

resulting trust arose in favor of AIC following the deposit of the funds in the DACA 2

Account.[38]  Alternatively, the AIC Liquidator alleges that AIC has an independent right

to be paid the disputed funds set aside in the DACA 2 Account and that this right arises

from JCF's agreement to carve out a portion of its collateral for that payment.[39]  Thus, the

AIC Liquidator believes that it would be appropriate to impose a constructive trust for

the benefit of AIC over all the funds held in the DACA 2 Account.

---

[36]  Adv. Proc. D.I. 30.

[37]  Adv. Proc. D.I. 32.

[38]  AIC Liquidator's Answer and Counterclaim, p. 46, ¶¶ 22.A-22.B; Br. in Support of Mot. to Dismiss. Ex. C, AIC Liquidator's Proof of Claim, ¶ 9 ("Nature of Property: Constructive trust alleged on cash in DACA Account; statutory trust on cash in 8387 Account").

[39]  AIC Liquidator's Answer and Counterclaim, p. 43, ¶ 4.

The AIC Liquidator asserts in her motion to dismiss the Complaint for lack of subject matter jurisdiction that this adversary proceeding is nothing more than a dispute between two creditors over funds in which none of the Debtors have an interest, and which will not affect the administration of the estates.  The AIC Liquidator contends that the Settlement Agreement resolves all the disputes between JCF and the Debtor's estates as well as led to the Trustee's consent to waive and release any claim the Trustee might have had to the DACA 2 Account.  Accordingly, the AIC Liquidator seeks dismissal of the Complaint as a whole, since, so the argument goes, the remaining issues involve solely a dispute between two non-Debtors as to property which the Trustee has conceded is not property of these estates.  In other words, the AIC Liquidator assertion is that the determination as to which creditor receives the funds in the DACA 2 Account will have no effect on the administration of the Debtors' estates.  Essentially, the AIC Liquidator contends that once the Debtors' estates have no more interests in the funds held in the DACA 2 Account, this Court is without jurisdiction to adjudicate disputes concerning such property.

Alternatively, The AIC Liquidator argues that even if the Court finds that it has subject matter jurisdiction over this adversary proceeding, then pursuant to 28 U.S.C § 1334(c)(1), the Court should abstain from hearing those claims in favor of the Illinois Court overseeing the rehabilitation proceeding of AIC.

*ii.    JCF*

JCF asserts that while the AIC Liquidator urges the Court to abdicate its authority over this adversary proceeding, the AIC Liquidator actually asks the Court to find that the funds in the DACA 2 Account are not property of the estates.  JCF further argues that such a determination lies at the heart of bankruptcy law.  Thus, according to the argument, unless the AIC Liquidator prevails on her claim that the funds in the DACA 2 Account are held in a constructive trust for AIC's benefit, the undisputed facts demonstrate that those funds fall within section 541's broad definition of property of the estate.  JCF continues that the Settlement Agreement does not change this reality.  Accordingly, JCF contends that the Trustee has not disclaimed AIH's interest in the funds in the DACA 2 Account, but has simply recognized JCF's priority lien over them.  In this regard, JCF points to the fact that by requiring JCF to reduce its deficiency claim by the amount of any recovery from the DACA 2 Account, the Settlement Agreement expressly acknowledges that such funds constitute estate property.

JCF argues that the principal issues raised by the Complaint and Counterclaims are: (i) whether JCF has a validly perfected priority lien on and security interest in property of AIH's estate; and (ii) whether AIC has a claim against AIH's estate, as set forth in a proof of claim filed by the AIC's Liquidator, that may be paid from that same property of the estate prior to the payment to JCF secured claim.  JCF disputes the fact that the AIC Liquidator has an allowed $8,572,000 claim against the estate and rejects the AIC Liquidator's assertion that this is simply a zero-sum game between two creditors

14

which does not involve or affect the Debtors' estates.  In any case, these, according to JCF, are statutorily core matters that must be determined by this Court.  JCF asserts that the amount and allowance of AIC's claim cannot be separated from the bankruptcy proceeding.  Furthermore, JCF argues that having consented to this Court's jurisdiction by filing proofs of claim in these cases, the AIC Liquidator cannot now seek to avoid this Court's adjudication of the merits of AIC's claims against the Debtors' estates.

**F.    Motion to Dismiss for Failure to State a Claim - Parties' Arguments**

> *i.    JCF*

JCF asserts that the Counterclaims lack any plausible basis and thus should be dismiss at this preliminary stage.  Simply put, JCF contends that the counts for breach of contract, fraudulent transfer, and actual fraud, all fail to overcome the hurdle of plausibility and thereby fail to state a claim upon which relief can be granted under the relevant and acceptable standards.   First, JCF asserts that the AIC Liquidator's Counterclaims fail to meet the heavy burden to show that that AIC is a third party beneficiary of the Consent and Waiver or that the Consent and Waiver intended to benefit AIC directly.  JCF insists that the AIC Liquidator's argument contradicts the terms of the agreements at issue and thus is not entitled to the presumption of truth.  As part of this argument, JCF contends that the AIC Liquidator's claim to payment from AIH under the Tax Allocation Agreement does not entitle it to request, much less compel, JCF to consent to payment of such unsecured claim under the terms of the Consent and Waiver.  JCF continues that the AIC Liquidator has not pled, and cannot plead, facts demonstrating

that it would have been unreasonable for JCF to refuse to consent to the use of its own collateral to pay an unsecured insider creditor after an event of default had occurred under the JCF Credit Agreement. JCF further asserts that the AIC Liquidator's request for this Court to impose a constructive trust based upon JCF's alleged breach is not a valid remedy for breach of contract. It also ignores, so the argument goes, the heavy burden a party seeking to impose a constructive trust has under Missouri law, the law of the location of the DACA 2 Account.

Second, JCF asserts that the AIC Liquidator's counterclaim for fraudulent transfer likewise fails to state a cognizable claim. To begin with, JCF argues that the AIC Liquidator ignores the high pleading standard set for claims of fraud under Rule 9(b) of the Federal Rules of Civil Procedure, which requires that such claims be pled with particularity. In claiming fraudulent transfer, JCF contends that the AIC Liquidator merely parrots the statutory elements without elaborating further. Additionally, JCF argues that the AIC Liquidator does not clearly plead which entity's property allegedly was transferred, flip flopping between AIH (on whose behalf the AIC Liquidator cannot assert claims) and AIC (which never treated the DACA 2 Account as its property). JCF continues that even if a transfer had occurred, the AIC Liquidator does not plead that JCF took less than reasonably equivalent value. Furthermore, JCF asserts that the AIC Liquidator is no more successful in pleading actual fraudulent intent. JCF contends that the AIC Liquidator misapplies the badges of fraud to which courts look to determine actual intent, taking snippets of statutory verbiage, and altering the language and

attempting to mold the statute so as to somehow fit the counterclaim. JCF insists that these types of bare and conclusory allegations are nothing more than wishful thinking that, by itself, cannot save the intentional fraudulent transfer counterclaim.

Finally, JCF contends that the AIC Liquidator does not allege fraud with the particularity required, choosing rote conclusions over actual identification of a fraudulent act or allegation of a specific intent to defraud. Similarly, JCF argues that the AIC Liquidator's common law fraud counterclaim does not state a claim upon which relief can be granted because the AIC Liquidator fails to allege facts that would support any of the requisite elements of fraud. JCF further states that even if the Consent and Waiver contained a false promise, this alone would be insufficient to allege fraud, as a false promise in and of itself is not actionable in fraud unless it is part of a broader fraudulent scheme. Likewise, JCF asserts that the AIC Liquidator does not plead any facts supporting the claim that JCF knew it was making a false statement. At bottom, JCF believes that the Counterclaims are not more than an attempt by an unsecured creditor to leapfrog over other creditors to get its claim paid.

### ii.  *AIC Liquidator*

The AIC Liquidator asserts that JCF attempt to minimize the facts to its own benefit. The AIC Liquidator contends that JCF's description of the reference to the 2014 Tax Payment in the Consent and Waiver as "obscure" does not make it any less supportive of the AIC Liquidator's claim that JCF knew why that sum was being segregated and for what purpose, and agreed to it. Further, the AIC Liquidator argues

that JCF tries to twist the facts as alleged in the Counterclaims to distance itself from AIC, and to suggest that the sole basis for the Counterclaims is that AIC has an unsecured claim under the Tax Allocation Agreement that somehow trumps the perfected security interest of JCF.   However, the AIC Liquidator emphasizes that she believes that the allegations in the Counterclaims make it clear that AIC has an independent right to those funds that arise out of the interlocked agreements at issue here, including JCF's consent, through the Consent and Waiver, to carve out a portion of its collateral for that payment. Specifically, the AIC Liquidator asserts that either AIC is a third-party beneficiary of the Consent and Waiver and the AIC Liquidator has standing to bring a breach of contract claim, or the AIC Liquidator is not bound by the terms of the Consent and Waiver and, therefore, may appropriately seek the equitable remedy of a constructive trust.  The AIC Liquidator is confident that the Counterclaims sufficiently state plausible claims for the imposition of a constructive trust on the funds segregated in the DACA 2 Account or any other relief the Court will deem appropriate.

## DISCUSSION

### A.      Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### i.      *Standard of Review*

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to bring a motion to dismiss for lack of subject matter jurisdiction.[40]  Such a motion challenges the

---

[40]  Fed. R. Civ. P. 12(b) is applicable to adversary proceedings by virtue of Fed. R. Bankr. P. 7012(b).

power of the federal court to hear a claim or case.[41]  Indeed, "because of the fundamental

and systemic nature of the defense, and its centrality to basic principles of judicial

federalism, lack of subject matter jurisdiction may be asserted at any time by the court,

*sua sponte*, either at trial or appellate level . . . ."[42]  However, as a rule, the party invoking

the federal court's jurisdiction bears the burden of establishing that the court has the

requisite jurisdiction.[43]

As many judicial decisions make clear, a motion under Rule 12(b)(1) may take one

of two forms.  The first, a facial challenge, asserts that the plaintiff had failed to properly

plead jurisdiction as required by Rule 8(a)(1), which means that the factual allegations in

the complaint are insufficient to show that the federal court has jurisdiction over the

subject matter of the case.[44]  In resolving a facial challenge, the court accepts the

jurisdictional allegations as true,[45] asking only whether those allegations sufficiently

establish a basis for federal subject matter jurisdiction.[46]  The other defect that may be

---

[41]  *See, e.g., Petruska v. Gannon University*, 462 F.3d 294, 302 (3d Cir. 2006); *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 788 (M.D. Pa. 2009); *Casino Caribbean, LLC v. Money Centers of America (In re Money Centers of America)*, No. 14-50437, 2017 WL 775780, at *4 (Bankr. D. Del. Feb. 28, 2017).

[42]  Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2004); *see also In re The Fairchild Corp.*, 452 B.R 525, 529 (Bankr. D. Del. 2011).

[43]  *See, e.g., D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *Common Cause of Pennsylvania. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009); *In re American Home Mortg. Holding*, 477 B.R. 517, 524 (2012).

[44]  *See, e.g., Emerald Capital Advisors Corp. v. Karma Automotive LLC (In re FAH Liquidating Corp., (f/k/a/ Fisker Automotive Holdings, Inc.))*, No. 16-51528, 2017 WL 663521, at *1 (Bankr. D. Del. Feb. 16, 2017) ("A Rule 12(b)(1) 'facial' challenge contents the sufficiency of the Complaint.  The court assumes that the allegations in the Complaint are true but examines the pleadings to determine if they present a case within the court's jurisdiction").

[45]  *See, e.g., J & D Home Improvement, Inc. v. Basement Doctor, Inc.*, 247 F. Supp. 2d 575, 577 (D. Del. 2003).

[46]  *See* Steven S. Gensler, *Federal Rules of Civil Procedure: Rules and Commentary* 265 (2017); *see also In re America Home Mortg. Holding*, 477 B.R. at 524.

challenged under Rule 12(b)(1), a factual challenge, attacks the existence of federal subject matter jurisdiction over the matter, whether properly pleaded or not.[47]  In such cases, the court does not accept the jurisdictional allegations as true, but instead must determine whether its subject matter jurisdiction has been properly invoked.[48]  Additionally, when the defendant purpose is to challenge the substance of the jurisdictional allegations, he or she may use affidavits, declarations, or any other evidence properly before the court.[49]

It is worth noting that the scope of Rule 12(b)(1) is flexible, often serving as a procedural vehicle for raising various attacks that challenge the federal court's ability to proceed with the action.[50]  Admittedly, however, under a particular set of circumstances there can be a lack of clarity surrounding the application of the facial and factual challenges definitions.  That is, the difference between the two forms of challenges is sometimes difficult to discern.  Here, the AIC Liquidator argues that based on the terms of the Tax Allocation Agreement, the Consent and Waiver, and the Settlement Agreement, the issues presented in the Complaint regarding the DACA 2 Account are nothing more than a dispute between two creditors to funds in which none of the Debtors

---

[47] *See* Gensler, *Federal Rules of Civil Procedure*, at 266; Wright & Miller, *Federal Practice and Procedure*, at § 1350; *Emerald Capital Advisors Corp. v. Karma Automotive LLC*, 2017 WL 663521, at *1 ("A 'factual' attack on jurisdiction argues that the pleadings satisfy a finding that jurisdiction exist, but that the allegations are false, thereby taking the case outside the court's jurisdiction").

[48] *See* Gensler, *Federal Rules of Civil Procedure*, at 266.

[49] Wright & Miller, *Federal Practice and Procedure*, at § 1350; *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *S.R.P. v. United States*, 676 F.3d 329, 343 (3d Cir. 2012); *Dugan v. Coastal Industries, Inc.*, 96 F. Supp. 2d 481, 482 (E.D. Pa. 2000).

[50] *See* Wright & Miller, *Federal Practice and Procedure*, at § 1350.

have an interest, and which will not affect the administration of the estates.[51]  The AIC Liquidator has not purported to present additional evidence, but merely asserts that looking at certain documents, that were attached to the Complaint, leads to the conclusion that this Court does not have subject matter jurisdiction over this adversary proceeding.  At bottom, whether the AIC Liquidator's motion presents a facial challenge or a factual challenge is not determinative of the issue.  Either way, the underlying argument of the AIC Liquidator is that the funds in the DACA 2 Account were never part of the estates, and even if the funds were property of the Debtors' estates, the Trustee has waived and released any rights that the estates had in those funds, and JCF agreed to pay those funds to AIC.  Thus, the threshold question here is whether the funds held in the DACA 2 Account are property of the estate or not.  As detailed below, determining whether something is property of the estate necessarily invokes this Court jurisdiction.

   ii.    *Analysis*

   1.  *Bankruptcy Courts' Jurisdictional Domains*

   Sections 1334 and 157 of the Judicial Code sets forth the bankruptcy courts' subject matter jurisdiction.[52]  Under section 1334(a), "the district courts shall have original and exclusive jurisdiction of all cases under title 11," and section 1334(e) gives district courts exclusive jurisdiction over all the property of the debtor as of the commencement of a case under title 11, and over all property of the estate."  Additionally, section 1334(b)

---

[51]  Br. in Support of Mot. to Dismiss, p. 16.

[52]  28 U.S.C. §§ 157, 1334 (2012).

grants district courts sitting in bankruptcy with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Such civil proceedings include, in addition to contested matters in cases, adversary proceedings like this one.[53]   Concurrently, section 157(a) allows the district court to provide "that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."   The Delaware District Court has so provided.[54]

Cases under title 11 refer merely to the bankruptcy petition itself.[55]   Proceedings "arising under" title 11 refer to the various routine matters in the bankruptcy case and to any proceedings within the case that may raise a disputed legal matter.[56]   Whether a proceeding "arises under" title 11 depends upon whether the Bankruptcy Code creates the cause of action or provides the substantive rights that are invoked in the proceeding.[57] Proceedings "arising in" a case under title 11 refer to proceedings that are not based on any right expressly created by title 11, but nevertheless would have no existence outside the bankruptcy case.[58]   Claims against the estate, even those based on state law, and matters involving the enforcement and construction of a bankruptcy court order, are in

---

[53]   *See In re Ames Department Stores, Inc.*, 542 B.R. 121, 134 (Bankr. S.D.N.Y 2015).

[54]   *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 384 (Bankr. D. Del. 2011).

[55]   *See, e.g., Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) (citing *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2005)); *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991).

[56]   *In re Sportsman's Warehouse*, 457 B.R. at 384.

[57]   *See, e.g., Id.*; *In re Ames Department Stores*, 542 B.R. at 135.

[58]   *See, e.g., Stoe v. Flaherty*, 436 F.3d at 216 (citing *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir.1999)); *In re Sportsman's Warehouse*, 457 B.R. at 384-385.

this category.[59]  Finally, "related to" proceedings include those matters that are not in the previous categories, but nevertheless relate to a bankruptcy case.  Whether a proceeding is "related to" a bankruptcy case depends on whether "the outcome of that proceeding could conceivably have any effect on the estate being administrated in bankruptcy."[60] Moreover, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[61] Despite some initial uncertainty, later decisions from the Third Circuit Court of Appeals confirmed that test determined in *Pacor* requires a conceivability of a direct impact upon the estate.[62]  The United States Supreme Court has also made clear that the critical import of the *Pacor* test is that "whatever test is used . . . bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."[63]

A related matter is the bankruptcy courts' judicial power.  Although in some aspects intertwined with jurisdictional issues, the bankruptcy courts' judicial power is fundamentally different.[64]  Pursuant to section 157, bankruptcy courts have "full

---

[59]  *See, e.g., In re Ames Department Stores*, 542 B.R. at 135.

[60]  *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

[61]  *Id.*

[62]  *See, e.g., In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009); *In re American Home Mortg. Holding*, 477 B.R. 517, 529 (2012).

[63]  *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (but, ". . . the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate").

[64]  *See In re Ames Department Stores*, 542 B.R. at 137 ("The authority granted by statute under section 157(b) to bankruptcy judges to issue final orders is thus sometimes referred to as a bankruptcy court's 'core jurisdiction'—though for the reasons obvious from the discussion above, it is 'jurisdiction' very different than the jurisdiction conferred under 28 U.S.C. §§ 1331-1334, and many prefer not to call it 'jurisdiction' at

adjudicative power with regard to 'core' proceedings, subject to appellate review by the district courts," but must "submit proposed findings of fact and conclusions of law to the district court" regarding "non-core" proceedings.[65] "In order to evaluate whether a claim is 'core,' a court must first look to the illustrative list of 'core' proceedings found in § 157(b)(2). It must then conduct [a] two-step test, according to which a claim will be deemed core 'if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'"[66] As a result, cases under title 11, proceedings "arising under" title 11, and proceedings "arising in" a case under title 11 will, almost by definition, be deemed core proceedings in which the bankruptcy court may enter final orders.[67] It is also worth remembering, that "core proceedings typically involve matters in which the interests of the federal bankruptcy system are most critical."[68]

---

all"); *see also In re USDigital, Inc.*, 461 B.R. 276, 283 (Bankr. D. Del. 2011); *In re RNI Wind Down Corp.*, 348 B.R. 286, 292 (Bankr. D. Del. 2006).

[65] *In re Resorts Int'l, Inc.*, 372 F.3d 154, 162 (3d Cir. 2004); 28 U.S.C. §§ 157(b)(1), 157(c)(1). This is where the debate around constitutional authority, and the Supreme Court's decision in *Stern v. Marshall* and its progeny, must be analytically situated, *see Stern v. Marshall*, 564 U.S. 462 (2011), *Wellness Int'l Network Ltd., v. Sharif*, 135 S. Ct. 1932 (2015). The issue in *Stern v. Marshall* was when, under the United States Constitution, the bankruptcy court could enter a final judgment as opposed to proposed findings of fact and conclusions of law in a case where subject matter jurisdiction existed under 28 U.S.C. § 1334(a) (2012). As such, *Stern v. Marshall*, is not a case about subject matter jurisdiction. Rather it addresses the power of the bankruptcy court to enter final orders, assuming that subject matter jurisdiction exists; *see also In re The Fairchild Corp.*, 452 B.R 525, 530 n. 14 (Bankr. D. Del. 2011); *In re USDigital, Inc.*, 461 B.R. at 276.

[66] *In re Exide Technologies*, 544 F.3d 196, 206 (3d Cir. 2008) (citing *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999)); *In re Winstar Comm., Inc.*, 554 F.3d 382, 405 (3d Cir. 2009); *see also In re Kessler*, 430 B.R. 155, 161 (Bankr. M.D. Pa. 2010) ("This approach is designed to be mindful of the constitutional limitations . . . A claim might not be 'core' even if it appears to fall within one of the illustrative examples of 28 U.S.C. § 157(b)(2)").

[67] *See, e.g., In re Kessler*, 430 B.R. at 161; *In re USDigital, Inc.*, 461 B.R. at 283.

[68] *In re Ames Department Stores*, 542 B.R. at 137.

A necessary conclusion must be that even if a bankruptcy court lacks constitutional power to adjudicate, dismissal of a proceeding pursuant to a motion under Rule 12(b)(1) would not be, in most cases, the correct course of action.   When a bankruptcy court, pursuant to *Stern*, cannot constitutionally enter final judgment on a bankruptcy related claim, "the relevant statute nevertheless permits the bankruptcy court to treat the claim as non-core and issue proposed findings of fact and conclusions of law for *de novo* review and entry of judgment by the district court."[69]

Finally, under some specific conditions, a bankruptcy court is required to abstain from hearing a non-core matters that are "related to" a case under title 11.[70]  The purpose of mandatory abstention is "to require federal courts to defer to the state courts to handle lawsuits which, although 'related to' a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts."[71]  Additionally, section 1334(c)(1) of the Judicial Code provides that nothing prevents a bankruptcy court "from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."[72]  In this regard, courts look to twelve-factor test to determine whether permissive abstention is appropriate.[73]   A

---

[69] *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014); *see also Reed v. Zwick (In re Reed)*, 559 B.R. 194, 203 (Bankr. N.D. Ohio 2016).

[70] *See* 28 U.S.C. § 1334(c)(2); *see also, e.g., In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 389 (Bankr. D. Del. 2011); *In re Maxus Energy Corp.*, 560 B.R. 111, 120 (Bankr. D. Del. 2016).

[71] *Beightol v. UBS Painewebber (In re Global Crossing, Ltd. Sec. Litig.)*, 311 B.R. 345, 349 (S.D.N.Y. 2003).

[72] 28 U.S.C. § 1334(c)(1) (2012).

[73] *See, e.g., Emerald Capital Advisors Corp. v. Karma Automotive LLC (In re FAH Liquidating Corp., (f/k/a/ Fisker Automotive Holdings, Inc.))*, No. 16-51528, 2017 WL 663521, at *5 (Bankr. D. Del. Feb. 16, 2017); *In re Maxus*

bankruptcy court's evaluation of these factors is not a mathematical exercise, and the decision of the court on permissive abstention is left to the bankruptcy court's broad discretion.[74]

## 2. The Bankruptcy Court has Jurisdiction over this Core Matter

The DACA 2 Account is held solely in the name of AIH. As such, the account and its funds are presumably property of the estate under section 541(a) of the Bankruptcy Code.[75] This is the avenue upon which JCF advances its claim to priority over the disputed funds. However, the AIC Liquidator asserts that the funds in the DACA 2 Account were never part of the bankruptcy estates, and even if the funds were property of the Debtors' estates, the Trustee has waived and released any rights to those funds, and JCF agreed to pay those funds to AIC. In other words, the AIC Liquidator contends that the funds at issue here are held in trust for the benefit of AIC, and thus, never constituted part of the bankruptcy estate. Indeed, under section 541(d) of the Bankruptcy Code, property of the estate does not include "property in which the debtor holds, as the commencement of the case, only legal title and not an equitable title."[76] The "classic definition of a trust . . . [is that] the beneficiary has an equitable interest in the trust

---

Energy Corp., 560 B.R. at 124-125; In re Kessler, 430 B.R. 155, 161 (Bankr. M.D. Pa. 2010); Republic Underwrites Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.), 409 B.R. 720, 728-729 (Bankr. D. Del. 2009).

[74] Trans World Airlines, Inc. v. Karabu Corp., 196 B.R. 711, 715 (Bankr. D. Del. 1996); In re LaRoche Industries, Inc., 312 B.R. 249, 255 (Bankr. D. Del. 2004).

[75] 11 U.S.C. § 541(a) (2012); see also In re Catholic Diocese of Wilmington, Inc., 432 B.R. 135, 147 (Bankr. D. Del. 2010); In re Dameron, 155 F.3d 718, 721 (4th Cir. 1998).

[76] 11 U.S.C. § 541(d) (2012).

property while legal title is vested in the trustee."[77]  Thus, if the disputed funds are held, as alleged by the AIC Liquidator, in trust and can be traced from their source, they are not property of the estate.[78]  At bottom, therefore, this adversary proceeding requires a determination of whether the funds held in the DACA 2 Account are property of the estate or not.

The power of bankruptcy courts to determine if a particular asset constitutes property of the bankruptcy estate is clear.  As one bankruptcy court stated, "[t]he determination of what constitutes property of the bankruptcy estate is inherently an issue to be determined by the bankruptcy court."[79]  Another bankruptcy court rightly indicated that, ". . . the bankruptcy court always has jurisdiction to determine what is, or is not, property of the bankruptcy estate under 11 U.S.C. § 541."[80]  Furthermore, various courts have concluded that matters requiring a declaration of whether a certain asset comes within the definition of property of the estate, as set forth in section 541 of the Bankruptcy Code, are core proceedings.[81]  Specifically, the case law supports the view that actions

---

[77]  *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993).

[78]  *See In re Catholic Diocese of Wilmington, Inc.*, 432 B.R. at 147.

[79]  *Johnson v. Fisher (In re Fisher)*, 67 B.R. 666, 668 (Bankr. D. Colo. 1986); *see also Pension Benefit Guaranty Corp. v. Continental Airlines (In re Continental Airlines)*, 138 B.R. 442, 445 (D. Del. 1992) ("The determination of each party's interest in the property is made by reference to the applicable state's law, *Butner v. United States*, 440 U.S. 48, 54–56 (1979), and the Bankruptcy Code determines whether that particular interest may properly be included in the property of the estate.  The determination of the property of the estate is one of the core proceedings arising under title 11"); *In re Texaco Inc.*, 109 B.R. 609, 610 (S.D.N.Y. 1989) ("It is within the Bankruptcy Court's traditional jurisdiction to determine all matters relating to property in which the debtor has any interest").

[80]  *In re Ratner*, 146 B.R. 211, 214-215 (Bankr. N.D. Ill. 1992).

[81]  *In re Touch America Holdings, Inc.*, 401 B.R. 107, 117 (Bankr. D. Del. 2009) (and cases cited therein); *In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9, 28-29 (S.D.N.Y. 2012); *In re Ames Department Stores, Inc.*, 542 B.R.

regarding a constructive trust, such as the one requested by the AIC Liquidator, are core

proceedings.[82]  The Court of Appeals for the Fourth Circuit held that, "[a] claimant must,

therefore, prove in a bankruptcy proceeding the existence of a trust and his rights to it.

Clearly, the only proper forum for determining whether assets held by a debtor are held

in constructive trust is the bankruptcy court, and such proceedings must be considered

core proceedings . . . The finding of a constructive trust by the bankruptcy court and a

determination of the proper distribution of that trust are intimately tied to the traditional

bankruptcy functions and estate, and, therefore, are core matters within the clear

jurisdiction of the bankruptcy court."[83]

A bankruptcy estate is a construct of section 541 of the Bankruptcy Code and thus

a proceeding to determine the bounds of the estate necessarily derives from the

bankruptcy case.[84]  Therefore, the Court concludes that it has jurisdiction over this

adversary proceeding.  Further, the Court finds that the determination of whether the

funds held in the DACA 2 Account are indeed property of bankruptcy estate is a core

proceeding.  Summarizing a similar issue, one bankruptcy court rightly stated that, "what

is or is not property of a bankruptcy estate is an issue that stems from the bankruptcy

itself, one that can only arise in a bankruptcy proceeding, since the concept of what is

---

121, 138 (Bankr. S.D.N.Y 2015); *In re Continental Airlines*, 138 B.R. at 445; *see also In re Downey Financial Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010).

[82]  *In re New Century Holdings, Inc.*, 387 B.R. 95, 105 (Bankr. D. Del. 2008).

[83]  *In re Johnson*, 960 F.2d 396, 402 (4th Cir. 1992).

[84]  *See In re Salander-O'Reilly Galleries, LLC*, 475 B.R. at 29.

property of a bankruptcy estate does not exist outside of a bankruptcy case."[85]   Finally,

as the Court finds that the instant matter is a core proceeding, mandatory abstention is

not applicable.   Moreover, since determination of whether the disputed funds are

property of the estate is intimately tied to the Court's traditional functions, abstention is

inappropriate.[86]   Accordingly, in the exercise of its discretion the court will not abstain.

**B.    Motion to Dismiss for Failure to State a Claim**

 *i.    Standard of Review*

 Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move

to dismiss the plaintiff's complaint on the grounds that it fails to state a claim that entitles

the plaintiff to any form of relief.[87]   The gist of such an objection is that the wrong that

the plaintiff describes in the complaint is not recognized as a violation of any legal rights.

Because the purpose of rule 12(b)(6) motion is to test whether the plaintiff's allegations,

assuming they can be proved, state a claim for which a court might grant relief, the only

question posed by such a motion is whether the complaint itself states a legally sufficient

---

[85]   *In re BankUnited Financial Corp.*, 462 B.R. 885, 893-894 (Bankr. S.D. Fla. 2011) (internal citations omitted), *rev'd on other grounds*, 727 F.3d 1100 (11th Cir. 2013).

[86]   The AIC Liquidator asserts, among other things, that JCF is forum shopping.   However, it should be noted that at the time JCF commenced this adversary proceeding the Trustee had not yet acknowledged the extent, validity, and priority of JCF's security interest in the DACA 2 Account.   Accordingly, when JCF filed this adversary proceeding this Court was, undisputedly, the only court that could have resolve the claims made by JCF.

[87]   Fed. R. Civ. P. 12(b) is applicable to adversary proceedings by virtue of Fed. R. Bankr. P. 7012(b). Naturally, the same legal standards apply with respect to dismissal of a defendant's counterclaim, *see, e.g., Perelman v. Perelman*, 545 Fed. Appx. 142 (3d Cir. Oct. 25, 2013); *Internet Media Corp. v. Hearst Newspapers, LLC*, No. 10-690, 2012 WL 3867165, at *2 (D. Del. Sep. 6, 2012) ("In the wake of *Twombly* and *Iqbal*, it is clear that a[ ] counterclaim must set forth sufficient facts to give rise to a plausible claim for relief") (citing *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F.Supp.2d 893, 898 (E.D. Pa. 2011)); *Bayer CropScience AG v. Dow AgroSciences LLC*, No. 10-1045, 2011 WL 6934557, at *2 (D. Del. Dec. 30, 2011) ("Counterclaims … are ordinarily subject to the demands of *Twombly/Iqbal*").

claim. Consequently, as a rule, the court does not consider any other pleadings or evidence in deciding a motion to dismiss.[88] Nor does the court consider or determine whether the facts alleged in the complaint are true. For purposes of a motion to dismiss for failure to state a claim upon which a relief can be granted, the court assumes that the facts alleged are true.[89] Put another way, the motion to dismiss only addresses a purely legal question: whether, if the plaintiff proves the allegations in the complaint, he or she will have established a cause of action entitling the plaintiff to some sort of relief from the court.[90] Further, dismissal of a suit for failure to state a claim is, naturally, a drastic measure. Consequently, a court should give every benefit of the doubt to the plaintiff in deciding the motion, including not taking into account the likelihood that the plaintiff will be able to prove his or her factual allegations.[91] In other words, the court must assume for purposes of deciding a motion for dismiss that the plaintiff will prove them.

---

[88] *But see Angstadt v. Midd-West School Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) ("[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment") (citing *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)); *O2Cool, LLC v. TSA Stores, Inc. (In re TSAWD Holdings, Inc.)*, Adv. No. 16-51014, at *11 (Bankr. D. Del. March 1, 2017) ("The Court may also consider documents integral to the complaint's allegations and documents referenced in, or relied upon by, a complaint"). *Compare with Six Flags, Inc. v. PARC Mgmt., LLC (In re Premier Intern. Holdings, Inc.)*, 443 B.R. 320, 329 n.47 (Bankr. D. Del. 2010) (on a motion to dismiss, the court need not accept as true allegations contradicted by documents attached to the pleadings).

[89] *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *see also* Steven S. Gensler, *Federal Rules of Civil Procedure: Rules and Commentary* 286 (2017).

[90] *Pontiaki Special Maritime Enterprise v. Taleveras Group*, No. 16-247, 2016 WL 4497058, at *1 (D. Del. Aug. 26, 2016) ("The Court may grant such a motion to dismiss only if, after accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief") (internal quotation marks omitted, quoting *Maio v. Aetna Inc.*, 221 F.3d 472, 481-482 (3d Cir. 2000)).

[91] *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)."[92]  At bottom, "[e]valuating a motion to dismiss is a context-specific task that requires the [] court to draw on its judicial experience and common sense."[93]  With these principles in mind, the Court will proceed with its analysis of JCF's motion to dismiss the AIC Liquidator's Counterclaims.[94]

### ii.    The Counterclaims Pass Muster under Rule 12(b)(6)

As set forth therein, the crux of the dispute is whether the DACA 2 Account is property of the estate.  Indeed, the AIC Liquidator present several alternative theories as grounds for her attempt to establish that AIC is solely entitled to the disputed funds.  On first sight, as part of this effort, it seems as if the AIC Liquidator offers arguments at every possible direction.  As already stated above, on the one hand, the AIC Liquidator asserts that the funds in the DACA 2 Account were never part of the Debtors' estates.  On the other hand, the AIC Liquidator contends that even if the funds were property of the bankruptcy estates, the Trustee has waived and released any rights that the estates had in those funds, and JCF agreed to pay those funds to AIC pursuant to the Consent and

---

[92] *Victaulic Co. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Pontiaki Special Maritime Enterprise*, 2016 WL 4497058, at *1 ("The complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element of the plaintiff's claim") (internal quotation marks omitted, citing *Wilkerson v. New Media Tech. Charter School Inc.*, 522 F.3d 315, 322 (3d Cir. 2008)).

[93] *Pontiaki Special Maritime Enterprise*, 2016 WL 4497058, at *2 (internal quotation marks omitted, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

[94] For a comprehensive summary of the applicable standards guiding a decision on motion to dismiss for failure to state a claim *see In re Green Field Energy Services, Inc.*, Adv. No. 15–50262, 2015 WL 5146161, at *1-2 (Bankr. D. Del. 2015).

Waiver.  It is clear that sometimes those arguments appear not to be consistent which each other.[95]  However, at the end of the day, the Court concludes that each count in the Counterclaims also goes to whether the funds held in the DACA 2 Account are property of the estate.  The imposition of a constructive trust may be an appropriate remedy for any of the causes of action asserted.[96]  Thus, if the AIC Liquidator prevails on any of the counterclaims it would be determinative of the ultimate issue of whether the funds are property of the estate. The Court finds that the Counterclaims contain specific factual allegations, taken they are true, to suggest that the AIC Liquidator is entitled to the funds in the DACA 2 Account.[97]  As such, it is apparent that there is a dispute of a material fact. Accordingly, the Court will deny JCF's motion to dismiss the AIC Liquidator Counterclaims.

## CONCLUSION

For the reasons stated above, this Court finds that it has jurisdiction to hear the instant adversary proceeding, the AIC Liquidator's request that this Court abstain from

---

[95]  The allegation that the funds in the DACA Account were never part of the bankruptcy estate is incompatible with the fact that the AIC Liquidator filed a proof of claim as well as with the assertion that AIC's entitlement to the disputed funds relies on contractual grounds that give AIC some sort of priority. Although the Federal Rules of Civil Procedure allows a party to plead inconsistent allegations in the alternative, *see* Fed. R. Civ. P. 8(d)(2), contradictory allegations sometimes are a reason to support dismissal, *see, e.g., Maloney v. Scottsdale Ins. Co.*, 256 Fed. Appx. 29, 32 (9th Cir. 2007) (affirming district court dismissal based on contradictory allegations).

[96]  *See In re American Home Mortg. Holding*, 458 B.R. 161, 171-172 (Bankr. D. Del. 2011) ("The imposition of a constructive trust is a remedy, not a separate cause of action. . . . The imposition of a constructive trust may be appropriate once breach of fiduciary duty or actual fraud has been proven").

[97]  *See, e.g., In re BankUnited Financial Corp.*, 727 F.3d 1100 (11th Cir. 2013) (finding that under a tax sharing agreement between affiliated corporations at issue in that case, tax refunds were not property of the parent corporation bankruptcy estate).

hearing the proceeding is inappropriate, and JCF's motion to dismiss the Counterclaims also is denied.  Respective orders will be entered.